# NELSON NORMAN v. KELSO FARMERS MUTUAL FIRE INSURANCE COMPANY.[1]

February 24, 1911.

Nos. 16,864—(194).

**Reformation of insurance policy — evidence.**

Plaintiff owned one tract of eighty acres in one section, and another tract of eighty acres in another section. The policy here sought to be reformed purported to insure property on eighty acres which plaintiff did not own, and failed to insure property on eighty acres which plaintiff did own. It is *held* that the evidence justified the trial court in so reforming the policy as to make it conform to plaintiff's intent to insure his property on the land he owned.

Action in the district court for Sibley county to reform a certain policy of fire insurance and to recover $200 damages for the destruction of six stacks of wheat. The complaint alleged that, at the time the contract was entered into, it was mutually agreed that all of plaintiff's stock and farm property on all the several tracts of land described should be insured, and plaintiff believed and understood the application for such insurance and said policy had been so written in accordance with such agreement of the parties; that through the mistake of defendant's agent in writing the application and policy the plaintiff's land was erroneously described. The answer, among other matters, admitted that six stacks belonging to plaintiff were consumed by fire, but alleged that they were not covered or intended to be covered by the policy; that the loss was caused by the use of a steam threshing machine and denied that plaintiff had performed the conditions of the policy and alleged that he had violated the policy in the following words: "Sec. 18. This company shall be liable for the amount of two thirds of the

[1]Reported in 130 N. W. 13.

[Note] Reformation of insurance policy for mistake of soliciting agent, see note in 8 L.R.A.(N.S.) 66.

114 M.—4.

actual cash value for any loss caused by the use of steam threshing machines at the time of the loss under the following proviso: That the insured shall keep at the time when said machine is in operation two barrels of water, four pails, and one ladder within twenty-five feet of such grain or stacks to be threshed" in that he did not, at the time when said machine was in operation, keep two barrels of water, four pails and one ladder within twenty-five feet of the stacks, and that the loss is the loss referred to in the complaint; that an action was brought on August 9, 1909, for the same cause and judgment rendered on the merits dismissing the complaint. The reply admitted that the loss referred to was occasioned by the use of a steam threshing machine, but plaintiff alleged that at all times he had performed all the conditions of the policy.

The case was tried before Morrison, J., who made findings and ordered judgment in favor of plaintiff, and that he recover $199.08. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

*W. F. Odell* and *W. C. Odell,* for appellant.

*W. H. Leeman,* for respondent.

[JAGGARD, J.][1]

Plaintiff, a farmer, owned eighty acres in section 21, and another eighty in section 23, which he cultivated as one farm. He raised grain, horses, and cattle on both tracts. One Stretel (deceased at time of trial), an agent of defendant company, saw plaintiff with respect to renewal of an insurance policy plaintiff had formerly had with defendant company. An application was signed by the plaintiff, in which the property was described as the northeast quarter of section 21. In other words, the policy insured one eighty acres which plaintiff did not own, and did not insure eighty acres which plaintiff did own. The policy was issued in accordance with the application and was in plaintiff's possession for two years. He had one loss under the policy before the loss here in suit. At the time of executing the application, plaintiff signed a statement in

[1]See per curiam order on page 53.

these words: "The foregoing [application] is my own agreement and statement, and is a correct description of the property on which indemnity is asked." The policy bore this indorsement: "Please read conditions of this policy. See inside pages, and see if the description of the property is correct, and, if not, immediately notify the company." This action was brought to reform the policy of insurance, so as to make it apply to grain destroyed by fire situated on section 23. The trial court reformed the policy, by inserting therein the description of plaintiff's eighty-acre tract in section 23. Judgment was entered for plaintiff. This appeal is from that judgment.

The defendant rightfully concludes that: "The assignments of error may be properly grouped together, and all considered in the discussion of the one question: Is the evidence sufficient to support the finding that the policy of insurance issued does not represent the true agreement of the parties as respects the property to be insured? for, if the findings are not supported by the evidence, the judgment must be reversed."

There is little controversy as to the rules of law applicable to this case. Defendant has referred us to Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705. It was there held: "The determination of the issues in this case involves the application of well-settled and elementary doctrines of equity. (a) Before a court of equity will interfere to reform a written instrument, it must appear, substantially as alleged in the pleadings, that there was in fact a valid agreement sufficiently expressing in terms the real intention of the parties, that there was in fact a written contract which failed to express such true intention, and that this failure was due to mutual mistake, or to mistake of one side and fraud or inequitable conduct of the other. (b) These facts must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing and not doubtful. Mere preponderance of testimony is not sufficient. (c) Such relief will be extended to those only who have not, by their own conduct (as laches, negligence, or otherwise), put themselves in such a position as to render it unjust to change the situation, especially when such change might injuriously affect the rights or status of innocent third parties."

This general rule we have no desire to modify or qualify in ordinary cases. Somewhat different principles, however, apply specifically to insurance policies. It is well settled that the agent of mutual, as well as of stock or proprietary, companies who makes out an application for insurance, must be deemed the agent of the insurers. Hence, if he makes out that application incorrectly, although all the facts are correctly stated to him by the applicant, the error or mistake is charged to the insurer, and not to the insured. Mitchell, J., in Kausal v. Minnesota F. M. F. Ins. Assn., 31 Minn. 17, 16 N. W. 430, 47 Am. Rep. 776; May, Insurance, § 120. So in Hay v. Star, 77 N. Y. 235, 240, 33 Am. Rep. 607, the court says:

"The negligence of the plaintiff in not discovering the change and laches, in not sooner seeking relief, are questions which make the propriety of granting relief in a given case, discretionary. * * * Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments."

The facts in Spurr v. Home Ins. Co., 40 Minn. 424, 42 N. W. 206, quite closely resemble those in the case at bar. In that case the policy insured Spurr "on certain wheat stored in an elevator." Spurr paid the premium, but never examined the policy. This court held that the testimony, taken as a whole, left no room for doubt as to the intention that the policy should cover all grain in the elevator, and not Spurr's wheat only. The trial court found against the plaintiff upon the alleged facts of mutual mistake in the policy. Notwithstanding this, however, the supreme court reformed the policy.

We have read the record in this case. On some points the recollection of the principal witness, Frank Norman, the son, who was present with his father, the plaintiff, and Strebel, when the application was signed, is indefinite and uncertain. The testimony of the son and father is not harmonious, especially as to whether the father had given Strebel a tax receipt from which to get a description of the property, and as to whether the application was read to

the plaintiff before he signed it. The evidence, however, as to the principal matter in issue, is clear and certain. The son testified that Strebel and his father talked over the property to be insured. "It was talked over. He brought up the question of grain, cattle and horses, machinery, and furniture in the house, and these different items, the different items being entered in the application, I brought up the point, I asked Mr. Strebel myself, whether the policy would include both our farms, or my father's farms, and my father then asked him direct whether the application would include both farms. Q. Both tracts of land? A. Both tracts of land; and his reply was that the policy would cover the items mentioned on both farms. Q. Yes; now, you say you asked the question yourself? A. I did. Q. If the policy, the way it was to be drawn, would cover both? A. Yes. Q. And then your father subsequently talked with Mr. Strebel about that same subject? A. He did. Q. Well, when these questions were asked as to the policy covering the insurance on both tracts of land, what did Mr. Strebel say? A. Mr. Strebel stated the policy would cover both tracts of land. That was, as near as I can remember, his exact wording. Q. Well, now, are you sure whether he said would or would not? A. I am positive that he said would."

While there can be no question that a written instrument signed by the parties should not be easily disturbed or its terms altered in any material respect without full measure of proof, and while a court requires cogent proofs of mistake before reforming such an instrument, we are of the opinion that, taken as a whole, the evidence in this case was sufficient to justify the finding and conclusion of the trial court. No such laches was shown as to show abuse of discretion by the trial judge.

PER CURIAM.

For the reasons given in the foregoing opinion, prepared by the late Justice JAGGARD, in accordance with the views of the court, the judgment appealed from is affirmed.