# FRED R. BABCOCK and Others v. CANADIAN NORTHERN RAILWAY COMPANY.[1]

May 10, 1912.

Nos. 17,666—(239).

**Fire set by locomotive — evidence.**

Evidence held sufficient to warrant finding of jury that the fire which caused the injuries sued for was set by the defendant's locomotive.

**Amendment of complaint.**

Court *held* not to have abused its discretion in allowing amendment of complaint to conform to proof, by changing the plaintiff's allegation of ownership of the lands damaged by the fire herein involved and on which the personalty destroyed or injured by such fire was situated to an allegation of interest as entryman under the homestead laws.

**Same — continuance.**

Court *held* not to have abused its discretion in denying the defendant's application for a continuance on account of such amendment.

**Homestead entry — ownership of timber cut.**

A homestead entryman, in possession of his claim under a valid entry, is, except as between himself and the United States, the owner of all timber cut by him on the said claim, and need not, in an action for the destruction by fire of timber so cut and piled on the said premises, allege and prove that the said timber was cut in good faith for the purpose of preparing the land for tillage.

**Assignment of claim.**

In an action for injury and destruction of personalty by a fire alleged to have been set by defendant's locomotive, evidence *held* sufficient to show an assignment of the property-owner's claim for such injury and destruction to the plaintiffs.

**Objection to evidence insufficient.**

Objection to certain instruments offered in evidence as being "incompetent, irrelevant, and immaterial" *held* insufficient to challenge the admissibility of such instruments on the ground that they involved or grew out of an illegal transaction.

[1] Reported in 136 N. W. 275.

**Claim assignable.**

> A claim for damages for the destruction of personal property by fire is assignable.

**Assignment of claim by the insured.**

> An assignment of claim for damages to personal property by fire to the plaintiffs, who, as insurers of the said property, paid the loss to the owners, *held* not based upon the policy pursuant to which such payment was made, and hence not affected by any illegality which may have existed in the policy.

Eleven actions [1] in the district court for Polk county against the Canadian Northern Railway Company to recover for damages to property caused by fire set by defendant's locomotive. The substance of the pleadings will be found on pages 439, 440 and 442. The cases were tried before Watts, J., and one jury, under an agreement that they were to be tried as separate cases, and a separate verdict rendered in each case, and that each case was to stand independently of the others upon all of the evidence applicable to that case. At the close of the trial defendant's motion in each case for a directed verdict in its favor was denied. The jury returned a verdict in favor of each plaintiff as follows: Fred R. Babcock $1,036.64, James Clark $1,270, Thomas Hanbury $1,067, William J. Brennan $809, John R. Stone $265, Wheeler-Misner Loan Co. $325, Hans Christensen $1,098, Frank Levascque $753, Andrew P. Peterson $930, Edith Hall $525, Patrick Hanbury $695, and Mary Peterson $968.

Defendant, appealed in each case from the order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed in each case.

*Hector Baxter* and *Washburn, Bailey & Mitchell,* for appellant.

*Albert Chilgren, Charles Loring* and *G. A. Youngquist,* for respondents.

---

[1] James Clark, Thomas Hanbury, William J. Brennan, John R. Stone, Wheeler-Misner Loan Company, Hans Christensen, Frank Levascque, Edith Hall, Patrick Hanbury and Mary Peterson against the Canadian Northern Railway Company.

PHILIP E. BROWN, J,

These eleven actions were brought to recover damages alleged to have been suffered by the plaintiffs in consequence of a fire claimed to have been set by one of the defendant's locomotives on September 29, 1910. The cases were tried before one jury under stipulation that they should be tried as separate cases, all evidence admissible as to any one of them to be received and by the jury applied to the case to which it was applicable, and separate verdicts to be rendered. Plaintiffs had verdicts in all of the actions, motions were made in the alternative for judgment notwithstanding the verdict or for a new trial, but were denied, and this appeal was taken. The cases must be disposed of here as separate cases. The Babcock case involves some questions not common to any of the others, and likewise the Christensen, Hall, and Thomas Hanbury cases. All of the cases, however, involve the question of the origin of the fire.

1. The defendant strenuously contends that the evidence is insufficient to sustain the finding of the jury that the fire was set by it.

It appears without conflict that on September 29, 1910, shortly after one o'clock in the afternoon, a fire was discovered on the north side of the defendant's right of way, nearly midway between the stations of Williams and Cedar Spur, in Beltrami county; that the distance between these stations was about two and one-half miles, the former being west of the latter, and the track between them was straight; that there was no wagon road directly connecting these stations, and that persons walking from one to the other customarily walked along the railroad track; that the summer and early fall of 1910 were very dry, and that the right of way on the north side of the track, near where the fire started, was incumbered with dry grass and other combustible material; that during the said summer and fall fires were burning in numerous directions from such point, and the country for many miles in all directions was timber land, consisting of cedar and tamarack, most of which had been cut over and the slashing of dead timbers left lying on the ground; that most of this country had been homesteaded, and many of the settlers had been fighting fires throughout the said summer and fall, and that some

of these fires were burning at the time the fire in question started, none of them, however, being near; that at the time such fire started a hard wind was blowing from the south, or a little to the west of south; and that the defendant's locomotives were equipped with spark arresters to prevent the escape of sparks and fire. It was conceded by the defendant's counsel on the oral argument in this court that the fire in question, after it started as aforesaid, spread to the lands of the several plaintiffs herein, and burned or injured the property described in their several complaints.

In addition to the foregoing undisputed facts, there was evidence in the case which, if believed, would have warranted the jury in finding the following facts: That on September 29, 1910, at about one o'clock, p. m., an east-bound freight train, owned and operated by the defendant, consisting of a locomotive and forty loaded cars, stopped at Williams and then proceeded east, working heavily, and between Williams and Cedar Spur emitted large quantities of smoke, and about three-quarters of a mile from Cedar Spur the locomotive was working; that the track between these stations is nearly level, except for a slight upgrade, for some distance to the east of Williams; that at about the time the said train started east from Williams no person was seen at or near the point where the fire in question started, though a person at either of these stations could see to the other station and beyond, and there were persons in a position to have seen anyone who might have been at such point at such time; that, notwithstanding that there were persons who could have seen from one of these stations to the other at the time such fire started, no smoke or other evidence of fire was seen at such point until after the passage of the said train, and that the engineer in charge of the train saw no fire at or near such point, though it was his duty to report any fire seen by him on the right of way; that about seven minutes after the train passed the point where the fire started smoke was seen at such point, and that seven minutes later fire was discovered at such point, on the north side of the defendant's right of way, burning along both sides of the fence on such right of way, north of the track, about one hundred feet having burned along such fence when the fire was so discovered.

There was also evidence, given on behalf of the defendant, tending to show that its locomotive in question was properly constructed to prevent the escape of fire, that it had been duly inspected, and that the best quality of coal was used; and there was no evidence that sparks or fire were seen escaping from such locomotive at the point where the fire started.

In Karsen v. Milwaukee & St. Paul Ry. Co. 29 Minn. 12, 11 N. W. 122, Justice Mitchell, in disposing of a contention that there was no evidence that the fire which caused the injury was set by the defendant's locomotive, said [at page 13]: "The evidence tended to show that the fire started in the grass near and to the leeward of defendant's track a few minutes after a train had passed; that there was quite a stiff breeze; that there was no person, and no other fire than that of the passing engine, in the vicinity at the time. It being a matter of common knowledge that engines do emit sparks which start fires in this way, and there being no other apparent probable explanation of the origin of the fire, we think these facts rendered it highly probable that this fire was set from the passing engine, and fully warranted the jury in so finding."

The rule thus announced was followed and applied against the defendant's contention in Sibley v. Northern Pac. R. Co. 32 Minn. 526, 21 N. W. 732; Dean v. Chicago, M. & St. P. R. Co. 39 Minn. 413, 40 N. W. 270, 12 Am. St. 659; Hoffman v. Chicago, M. & St. P. R. Co. 40 Minn. 60, 41 N. W. 301, and McClellan v. St. Paul, M. & M. Ry. Co. 58 Minn. 104, 59 N. W. 978, and is, we think, so well established that it cannot now be questioned, notwithstanding the consequence of its application flowing from the provisions of Laws 1909, p. 454, c. 378 [R. L. Supp. 1909, § 2041], to the effect that the liability of the railroad company becomes absolute upon proof that it set the fire. The defendant contends that in view of this statute, which virtually makes the railroad company an insurer against damages caused by fires set by its trains, the plaintiff now must establish the origin of the fire by stronger proof than has heretofore been required. But the plaintiff has always had the burden of establishing a state of facts from which the jury might reasonably

infer that a fire starting on or near a railroad right of way and tracks was started by a train or some other agency for which the defendant is responsible; and the statute referred to does not change this rule. It neither diminishes nor increases the plaintiff's burden in the matter of proof so far as the origin of the fire is concerned.

The defendant cites Minneapolis S. & D. Co. v. Great Northern Ry. Co. 83 Minn. 370, 86 N. W. 451, a case involving the destruction of urban property; but that case is clearly distinguishable from the cases above cited and the one at bar, as is apparent from the language used at page 375 [86 N. W. 453], where Lovely, J., in delivering the opinion of the court says: "Where a train passing through the open country is followed in close proximity of time thereafter by a fire which starts up near its right of way, by a reasonable process of induction, based upon the physical facts, all other causes of the fire might be excluded, and an inference justified that the fire was dropped from the smokestack; but the facts are quite different here, where other causes might well have intervened to occasion the fire." We think that the physical facts in the case before us were sufficient to warrant the jury in its finding that the fire in question was set by the defendant's locomotive.

2. The complaints in the Christensen, Hall, and Thomas Hanbury cases each alleged that the plaintiff was the owner of the lands described therein and that the premises were damaged, and also that a quantity of ties, posts, poles, etc., on the said premises were damaged or destroyed by the said fire. On the trial it appeared that the plaintiff Christensen was in possession of the land described in his complaint at the time of the fire, but that the only interest he had therein was under a homestead entry made in May, 1905. In the Hanbury case the same facts were shown, except that Hanbury's entry was made in February, 1905. The same showing was made in the Hall case, except that the plaintiff's entry was made in July, 1910. The court, on such trial, after it appeared that the said several plaintiffs' titles to their respective lands consisted of their interests under their several entries under the homestead laws, permitted them to amend their complaints by so alleging, against the objection of the

defendant, and the court thereafter denied the defendant's application to continue the said cases because of the making of such amendments. The defendant assigns these rulings as error. The granting of applications of this character rests in judicial discretion, and it does not appear that there was any abuse of such discretion in, or that any prejudice resulted to the defendant from, such rulings. The defendant's assignment of error in this regard cannot, therefore, be sustained.

In the three cases last mentioned the defendant claims that the plaintiffs therein were not the owners of the timber described in their said complaints, for the reason that such timber was cut from their homesteads, and hence that they could not recover for the loss thereof, unless it appeared that they were acting in good faith, with the intention of clearing up the land and making it a home, when they cut the said timber, and that the question of their good faith was one of fact for the jury. This claim had no foundation whatever to rest upon in the Hall case, for it does not appear that any of the cut timber destroyed or damaged by the said fire on her premises was cut thereon. It is very doubtful if there is any evidence in the Christensen and Thomas Hanbury cases to warrant the submission of the question of their good faith in cutting the timber therein involved to the jury, even if the defendant's contention in this regard is otherwise correct; for each of these plaintiffs testified that his purpose in cutting the said timber was to clear the land for the purpose of cultivation, and there was no testimony except that of the plaintiffs on this point. However, we do not care to determine the defendant's contention on this ground, nor on the ground that the defendant made no request for the submission of the question of the plaintiffs' good faith to the jury.

The court instructed the jury that "a homesteader who has cut timber on his homestead is the owner of it, if he has not parted with the title, as against every one but the United States, and is to be so considered." The defendant claims that this instruction was erroneous; that since the Federal statute [35 St. 1098, c. 321, § 49, U. S. Comp. St. Supp. 1911, p. 1604] makes it a crime to cut

or cause to be cut timber on the public lands of the United States, subject to the following proviso: "Nothing in this section shall prevent any miner or agriculturalist from clearing his land in the ordinary working of his mining claim or in the preparation of his farm for tillage or from taking the timber necessary to support his improvements or the taking of timber for the use of the United States"—it was incumbent upon the plaintiffs to plead and prove that the said timber was cut in the preparation of their claims for tillage.

To sustain this contention several Federal cases have been cited; but we do not consider any of them to be in point. They hold that, where timber is cut contrary to the provisions of the statute above cited, the entryman acquires no right or title thereto as against the United States, or that a mere trespasser on lands of the United States cannot recover for the destruction of timber cut therefrom.

The rights of a homesteader in the premises are declared by Gilfillan, C. J., in Carner v. Chicago, St. P. M. & O. Ry Co. 43 Minn. 375, at page 376, 45 N. W. 713, where the Chief Justice, in speaking of the rights of a timber claim entryman, says: "Plaintiff was not in wrongful possession of the land, as was the case in Lindsay v. Winona & St. Peter R. Co. 29 Minn. 411.[1] By his entry and compliance with the terms of the act he had acquired vested rights, even as against the United States. We held that in Red River, etc. R. Co. v. Sture, 32 Minn. 95,[2] in respect to one entering lands under the homestead acts of Congress, the rights under the homestead acts, though differently acquired, are no greater than those under the timber culture act. Under the latter act, the party entering has the right to occupy and cultivate the land, and owns the annual crops which he harvests, whether of grass, not sown by him, or of grains. As against the United States, he may not have a right to cut the trees for removal and sale, or for any purpose other than the proper cultivation of the land. His rights are analogous to those of one

[1] 13 N. W. 191.                                   [2] 20 N. W. 229.

under a contract to purchase, in which case the vendor might ordinarily, unless the contract provided otherwise, prevent the commission of waste. But as against third persons he is the owner." We are satisfied with the rule thus stated.

It appears that both Christensen and Thomas Hanbury had been in possession of these lands under valid entries for more than five years. We hold that for all practical purposes they were the owners thereof, and, except as between themselves and the United States, they were also the owners of the timber cut therefrom. Hence, for the purposes of these cases, the instruction given by the court was correct, and the defendant's contention cannot be sustained. The possibility of the United States bringing action against the defendants for the destruction of the timber cut by the entrymen on these claims and of which they were in possession is no defense to the defendant in these actions.

3. In the case designated herein and in the record as the Babcock case, the plaintiffs, Fred R. Babcock and fourteen others, alleged that they constituted an association organized for the purpose of insuring property against loss by fire, operating under a charter granted by the state of New York, and that they were authorized to transact business in the state of Minnesota; that on June 21, 1910, the said plaintiffs issued their certain policy, No. 30,015, insuring certain personal property belonging to the firm of Wetherby & Ecklund, at Cedar Spur, Minnesota, in a sum exceeding the loss hereinafter mentioned; that thereafter, while such policy was still in force, a portion of the said property, of the value of $1,057.80, was destroyed by a fire set by the defendant's locomotive; that thereafter the said plaintiffs settled with the assured, pursuant to the said policy, for the sum of $1,036.64, whereupon the assured delivered to the plaintiffs a receipt in full for such loss, and assigned and transferred to the plaintiffs each and all claims and demands against any person or corporation arising from or connected with such loss or damage, and subrogated the plaintiffs in their place and stead to all such claims and demands. The answer interposed by the defendant consisted of a general denial and an allegation of negligence

on the part of the said Wetherby & Ecklund and the absence thereof on the defendant's part.

On the trial the plaintiffs introduced in evidence over the defendant's objection as "incompetent, irrevelant, and immaterial," the insurance policy so alleged, an assignment by Wetherby & Ecklund of their claim against the defendant for the loss occasioned by the fire to the "Lumber Underwriters of New York," and a receipt executed by Wetherby & Ecklund to the "Lumber Underwriters of New York," acknowledging the settlement of the said loss by the latter, which said policy, assignment, and receipt were respectively designated as Exhibits A8, A9, and A10. The only evidence of the identity of the plaintiffs with the said Lumber Underwriters consisted of the said policy, which was entitled "Lumber Underwriters of New York" and purported to bind the plaintiffs individually as insurers thereunder, and the testimony of Ernest Wetherby, of the firm of Wetherby & Ecklund, hereinafter referred to; and the only evidence of the payment of anything by the plaintiffs to the said firm, or of any assignment by the latter to the former, consisted of the said Exhibits A9 and A10, both of which carried the same number as said policy and referred thereto, and the testimony of the said Ernest Wetherby to the effect that the said property was insured by Fred R. Babcock and others named in the said policy as constituting the Lumber Underwriters of New York, that they paid his said firm $1,036 under the terms of the said policy, and that he signed Exhibits A9 and A10 and delivered them to the said Lumber Underwriters. No proof was made of the plaintiffs' organization as an association.

The defendant contends that there was no proof of any assignment by Wetherby & Ecklund of their claim against the defendant to the plaintiffs. But as the instruments, A8, A9, and A10, and the evidence of Ernest Wetherby above recited, plainly show payment of the loss by the "Lumber Underwriters of New York," and an assignment of the claim, for the damage done by the fire, to such Underwriters, the only possible ground for such contention is that the identity of the plaintiffs with such Underwriters was not shown.

This objection is technical. We think the evidence above recited is abundantly sufficient to show the identity of the plaintiffs with the said Underwriters unless it should be held, as contended by the defendant, that the said Exhibits A8, A9 and A10 ought not to have been admitted in evidence.

It appears, however, that the only objection made by the defendant to the admission of these instruments was that they were "incompetent, irrelevant, and immaterial," and this objection was insufficient to call the court's attention to the point now made that the said policy, Exhibit A8, was illegal, in that it did not comply with R. L. 1905, § 1640, and subjected the party or parties who issued it to the penalty prescribed by section 1641. Again, the court instructed the jury that Wetherby & Ecklund assigned to the plaintiffs their right to recover damages for the defendant for the personal property destroyed or injured by the said fire, and that the plaintiffs were entitled to recover if the jury found in their favor such sum as damages as Wetherby & Ecklund would have been entitled to, had they not assigned the claim. To this instruction no objection was made, either at the trial or in the motion for a new trial, and hence the defendant is not in a position to urge the objections now made. This aside, the defendant's claim that a cause of action arising out of damages caused by the destruction of property by fire is not assignable under our statutes cannot be sustained. R. L. 1905, § 4502; 1 Dunnell, Minn. Digest, § 564; Hansen Mercantile Co. v. Wyman, Partridge & Co. 105 Minn. 491, 117 N. W. 926, 31 L.R.A.(N.S.) 727.

Neither can the defendant's contention that the plaintiffs' right to recover is based upon an unlawful insurance policy be sustained; for it appears that the plaintiffs' right to recover is founded upon the said assignment, and the illegality of the policy is not involved in this suit. Clearly Wetherby & Ecklund had the right to collect from the defendant the value of their property destroyed by a fire set by it, and also the further right as against the defendant, to assign such right of recovery to any one they saw fit. The consideration thereof, or the transaction which induced the assignment, is not material to the defendant, and it cannot take any advantage of any illegality

therein. The plaintiffs could have established their case without the aid of any illegal transaction, conceding that the said policy was illegal; for the alleged illegality of the policy rests in its terms, which are wholly immaterial to this case. The mere fact that an illegal transaction incidentally appears in the course of the establishment of the plaintiff's case is very different from the case where the plaintiff's claim is dependent upon such a transaction, so that to allow him to recover would be to recognize the illegal transaction and allow him to receive the benefit thereof. Until the payment of the loss under the policy, here attacked by the defendant, the benefit thereunder, if any recognizable by the courts, was to the assured, with a corresponding liability upon the plaintiffs. Certainly any illegality in the policy would not have prohibited the plaintiffs from discharging such liability by paying the loss to the assured, and hence we do not see how it can successfully be contended that the assignment they received from the assured, after or at the time of such payment, was a benefit under the policy. The policy and the loss thereunder were the mere circumstances that led up to or furnished the occasion for the assignment, and we do not think the latter can, in any legal sense, be said to depend upon the former. In this view of the case the cases cited by the defendant (Leuthold v. Stickney, 116 Minn. 299, 133 N. W. 856, and kindred cases decided by this court) upon the right to invoke an illegal transaction in aid of a recovery are clearly distinguishable.

Orders affirmed.

On June 3, 1912, the following opinion was filed:

PER CURIAM.

Appeals by the plaintiffs from the clerk's taxation of costs.

A statement of the facts sufficient for a general understanding of the matter here in controversy in all the cases involved in this appeal, excepting the Andrew P. Peterson case, occurs in the opinion The action last referred to was included in the defendant's appeal, but was dismissed later. The plaintiffs sought to tax $25 as statutory

costs in each of the actions, excepting the said Peterson case, wherein they claimed the right to tax $10 for its dismissal. The defendant objected to a greater allowance than $35 in all of the cases together, substantially on the ground that only one appeal was taken, and that, while they were separate actions in form, they constituted but one in fact.

The same fire caused all the losses, and the same attorneys appeared for the plaintiffs in all of the cases. Only one argument was made on the appeal, and only one paper book was printed and one brief served.

It was stated in the opinion that "the Babcock case involves some questions not common to any of the others, and likewise the Christensen, Hall, and Thomas Hanbury cases." In what respect these cases differed from the others is sufficiently disclosed in the opinion.

The allowance of statutory costs in this court is a matter of discretion. The court has provided by rule 29 that unless otherwise ordered the prevailing party shall recover costs as follows: (1) Upon a judgment in his favor on the merits, $25. (2) Upon dismissal, $10.

We are of the opinion that the circumstances of these several cases require the court otherwise to order, and we hold that the plaintiffs are entitled to $25 statutory costs in the Babcock case, and to the same amount in the Christensen, Hall, and Thomas Hanbury cases, considering them as one case, and a like amount for all the other actions, likewise considered as one case, excepting the Andrew Peterson action, wherein $10 should be taxed, making the total statutory costs to be taxed for all the plaintiffs the sum of $85, to be apportioned pro rata by the clerk to the plaintiffs in the several actions.

It is so ordered.