CENTRAL STATE BANK v. ROYAL INDEMNITY COMPANY.[1]

June 11, 1926.

No. 25,324.

**Action to reform surety bonds.**

In an action against a surety company, by indorsee of certain certificates of deposit, to reform certain surety bonds to assure payment of such certificates, *held*:

**Amendment of complaint after trial.**

(1) That it was not an abuse of discretion for the trial court to permit plaintiff after trial to amend its complaint to conform to the proof.

**Question of cashier's negligence for jury.**

(2) That the evidence made a question for the trier of fact to determine whether plaintiff's cashier was negligent in accepting the bonds without discovering that they contained a cancelation clause.

**Finding sustained.**

(3) That the evidence justifies the finding that the banks which issued the certificates were insolvent and that appellant knew of such insolvency when it attempted to cancel such bonds.

**Finding sustained that action of insurer's agent was fraudulent.**

(4) That the evidence justifies the finding that appellant's agent acted fraudulently in issuing bonds containing a cancelation clause.

[1]Reported in 210 N. W. 66.

**Frivolous demurrer stricken.**

(5) That the trial court did not err in striking the demurrer as being frivolous. G. S. 1923, § 9251.

**All or any parties may now be included in same action.**

(6) That the distinction between actions at law and suits in equity is abolished and parties liable upon the same obligation may all or any of them be included in the same action.

**When equity will grant relief to negligent person on insurance contract.**

(7) That while equity, as a general rule, will not extend relief to one who, through his own negligence, has sustained injury, yet a different rule applies to insurance contracts where the agent, in preparing the application, is the cause of the injury.

**Court of equity has discretion to submit specific questions to jury.**

(8) That the court was within its discretion in submitting specific questions to a jury, nor was there any reversible error in the form of such questions.

**Plaintiff entitled to reformation of surety bonds.**

(9) That the evidence justifies the finding that the bonds were not the kind agreed upon, and that plaintiff is entitled to judgment reforming the same.

**Assignment of error without merit.**

(10) That there is no merit in the assignment of error that plaintiff is not entitled to disbursements as taxed, nor in the contention that it was error to deny defendant's application for amended findings.

Actions, 1 C. J. p. 1047 n. 92; p. 1101 n. 60 New.
Bonds, 9 C. J. p. 91 n. 34.
Equity, 21 C. J. p. 585 n. 99.
Insurance, 32 C. J. p. 1142 n. 21.
Pleading, 31 Cyc. p. 450 n. 72; p. 738 n. 3.
Reformation of Instruments, 34 Cyc. p. 988 n. 41 New; p. 991 n. 61.
Trial, 38 Cyc. p. 1936 n. 80.

---

See 21 R. C. L. pp. 572 et seq; 3 R. C. L. Supp. p. 1170; 4 R. C. L. Supp. 1421; 5 R. C. L. Supp. p. 1164.

Action in the district court for Hennepin county by the indorsee of certain certificates of deposit to reform bonds given to secure

their payment and to recover thereon. The case was tried before Leary, J., who ordered judgment in favor of plaintiff. Defendant appealed from the judgment. Affirmed.

*Kingman, Cross, Morley & Cant,* for appellant.

*Paul J. Marwin,* for respondent.

QUINN, J.

Statement of case: Plaintiff is a banking corporation with its principal place of business in Minneapolis, and E. L. Forsythe was its cashier and active manager. Defendant is a New York corporation with authority to transact indemnity insurance in this state, and Elmer H. Cords was its duly authorized local agent at Minneapolis. The John F. Sinclair Company is a Minnesota corporation with its principal place of business in Minneapolis and John F. Sinclair, residing there, was its president.

Sinclair was also president of the Farmers State Bank of Hingham, the Security State Bank of Kremlin, the Security State Bank of Box Elder and the Gildford State Bank of Gildford, all in the state of Montana. The Sinclair Company was the owner of a majority of the capital stock of the four banks. In December, 1919, these banks each issued a certificate of deposit for $5,000, payable to the Sinclair Company and by it assigned to the plaintiff bank. As security for the payment at maturity of each of such certificates, plaintiff held the bond of the bank which issued it, with the Hartford Accident & Indemnity Company as surety. Such bonds were not subject to cancelation by the surety.

In November, 1920, the Hartford Company informed Sinclair that it did not care to carry the risk longer on account of the stringent financial situation in Montana. Sinclair requested the plaintiff bank to carry the certificates another year, which it refused to do unless their payment at maturity was secured by good surety company bonds. Sinclair then took the matter up with Mr. Cords, informed him fully as to the situation and exhibited to him the proposed renewal certificates already issued by the Montana banks. Forsythe testified at the trial, in effect, that he exhibited to Cords the certi-

ficates which plaintiff held and explained that the plaintiff was protected and could demand payment, but that it would accept renewals for one year provided a surety bond be written assuring the payment of the renewal certificates at maturity; that Mr. Cords then informed him that he would refer the matter to defendant's home office and advise him whether it would take the risk.

On December 4 Cords called Forsythe over the telephone and informed him that the company would write the bonds, saying: "Go ahead and renew the certificates. We will take care of you." Cords then prepared applications for the bonds on regular depository application blanks which contained a clause permitting the company to cancel the bonds on five days' notice. Sinclair signed the applications for the Montana banks. Shortly thereafter, Cords delivered the bonds to Sinclair, which contained the cancellation clause. Sinclair, without reading the bonds, took them together with the renewal certificates and delivered them to Forsythe, who accepted them and surrendered the old certificates, acting on behalf of the plaintiff bank. Upon receiving the bonds, Forsythe looked them over in the way of verifying the dates, amounts, names, etc., but failed to observe the cancellation clause. He testified that he had transacted much business with the Jones-Davis Insurance Agency, with which Cords was associated, and that he had learned to have implicit faith in their integrity and accuracy in transacting insurance business and that he trusted them; that he believed the bonds had been drawn and executed in accordance with the oral agreement and talk between Cords and himself and that he had no different idea until he received the notice of election to cancel the bonds in November.

Mr. Cords testified as a witness, called by the defendant, to the effect that when he delivered the bonds to Sinclair he knew they were not what plaintiff and Sinclair wanted or what they requested orally, but he thought he would take a chance; that the application blanks which he used were not the proper blanks for the policy which they wanted but he used them because he did not have the right kind on hand and that, when appellant attempted to cancel the bonds, he expressed strong disapproval thereof to Mr. Sinclair.

The certificates were presented to the banks which issued them, on December 5, 1921, and payment demanded, which was refused. Notice of default in payment was given by plaintiff to defendant but no payment was made except the interest to December 5, 1921. The assets of each of the Montana banks were, on November 1, 1921, and ever since have been, wholly insufficient for the payment of their debts and liabilities and receivers for each of such banks were appointed during the year 1922.

The original complaint was for recovery upon the bonds. Defendant pleaded in its answer the cancelation clause and its election to terminate its liability thereunder. In its reply plaintiff admitted an election to terminate the bonds, pleaded an agreement that the bonds were to secure the payment of the certificates at maturity, that defendant knew that the bonds were to secure the payment of the particular certificates at their maturity, and that the banks which issued the same were insolvent at the time of the attempted cancelation of the bonds. About three weeks before the trial, the complaint was amended by setting forth therein the agreement referred to in the reply that the cancelation clause was placed in the bonds by mutual mistake, that the banks which issued the certificates and their receivers were and are nonresidents of the state of Minnesota and could not be found therein, and asking for the reformation of the bonds to correspond with the oral agreement by eliminating therefrom the cancelation clause. By agreement the original answer and reply were to stand as the answer and reply to the amended complaint.

The cause was tried to the court, a jury was impaneled for the purpose of answering certain specific questions and its findings of fact were adopted by the trial judge. After the trial and before the case was decided, plaintiff moved for leave to amend the amended complaint, upon due notice. Counsel for defendant appeared and opposed the motion. The motion was granted and the pleading amended so as to conform to the proofs by inserting an allegation of fraud on the part of the defendant with reference to the insertion of the cancelation clause in the bonds, contrary to the verbal agree-

ment of the parties. Findings were thereafter made and an order filed awarding judgment in favor of plaintiff as asked for in the complaint. Thereafter plaintiff's costs and disbursements were taxed and allowed at $216.40 and judgment was entered upon the findings and order of the court. The appeal is from the judgment so entered.

Appellant questions the right of respondent to amend its complaint after trial. G. S. 1923, § 9281, applies. It provides that the court may allow pleadings to be amended after trial so as to conform to the proofs upon such terms as may be just. The complaint, as amended before trial, asked for reformation of the bonds upon the ground of mutual mistake. At the trial, defendant's agent, who prepared the application and wrote and delivered the bonds, was called by appellant as a witness and testified, in effect, that he knew at the time of issuing and delivering of the bonds that they were not the kind of undertakings the parties procuring the same had requested with reference to the cancelation clause. Under such circumstances, we are unable to understand how it could be said that respondent was not misled so as to justify the allowance of leave to amend. We are of the opinion and hold that the trial court was clearly within its discretion in allowing the amendment in substance and form. Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Red Lake F. M. Co. v. Thief River Falls, 109 Minn. 52, 122 N. W. 872, 24 L. R. A. (N. S.) 456, 18 Ann. Cas. 182; Babcock v. C. N. Ry. Co. 117 Minn. 434, 136 N. W. 275, Ann. Cas. 1913D, 924; Anderson v. M. St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N. W. 45; 21 R. C. L. 576, and cases there cited in note 14.

Subsequent to the amendment, after trial, appellant demurred to the complaint upon the ground of defective parties defendant. Upon motion, the demurrer was stricken as being frivolous. G. S. 1923, § 9251, provides that a party may, within the time allowed for answering a complaint, demur thereto if it appears upon its face that there is a defect of parties plaintiff or defendant. Instead of demurring to the original complaint, which was the same, so far as the parties thereto were concerned, as it was after the second amend-

ment, the appellant answered without raising the question of defect of parties and thereby waived the same, if any there was. G. S. 1923, § 9252; Bell v. Mendenhall, 71 Minn. 331, 73 N. W. 1086; Disbrow v. Creamery P. M. Co. 104 Minn. 17, 115 N. W. 751; Budds v. Frey, 104 Minn. 481, 117 N. W. 158, 15 Ann. Cas. 24.

The distinction between actions at law and suits in equity having been abolished in this state, parties liable upon the same obligation may all or any of them be proceeded against in the same action. G. S. 1923, § 9174; State v. Aetna C. & S. Co. 140 Minn. 70, 167 N. W. 294. The bonds are joint and several obligations of the parties and the surety may be sued alone. Posch v. Lion B. & S. Co. 137 Minn. 169, 163 N. W. 131; Bartles-Scott Oil Co. v. Western S. Co. 161 Minn. 169, 200 N. W. 937; Miles v. Nat. Surety Co. 149 Minn. 187, 182 N. W. 996.

The cashier did not read the bonds over at the time of their delivery further than to check the names, dates, amounts and typewritten parts. The vice of the transaction was not contained in that portion of the instruments. It lay in the applications which appellant's agent had prepared, knowing at the time they were not in accordance with the agreement of the parties and in the small printed part of the bond. The cashier had transacted much business of like character with the insurance agency which had been entirely satisfactory. The kind of security desired had been agreed upon by the parties and the cashier entertained implicit faith in the integrity of the insurance agency. While equity, as a general rule, will not extend relief to those who, through their own negligence, have sustained unfair treatment to their injury, yet different principles apply to insurance contracts where the authorized agent of the insurer, in preparing the application and in issuing the insurance, is, as in this case, the acknowledged cause of the error and injury which in no way is chargeable to the insured. Norman v. Kelso F. M. F. Ins. Co. 114 Minn. 49, 130 N. W. 13; Smith v. Nat. Fire Ins. Co. (Iowa), 207 N. W. 334. The kind of bond had been agreed upon prior to the preparation of the applications and whether the cashier was negligent in failing to detect the error complained of

was for the trier of fact to determine from the proofs under the circumstances. Smith v. Nat. Fire Ins. Co. supra; Haley v. Sharon Tp. Mut. Fire Ins. Co. 147 Minn. 190, 179 N. W. 895.

Seven specific questions were submitted to the jury. While the form of question 3, standing alone, may seem somewhat involved, yet, when read in connection with questions 4 and 5, it is very clear. The answer to 3 is in perfect accord with the testimony of the agent of the insurer who acknowledged that the bonds delivered were not what they were supposed to be by the assured. There is no merit in the contention that the court has no power to submit special questions to the jury in an equity case. Whether issues may be so submitted is within the discretion of the trial court. Lewis v. Murray, 131 Minn. 439, 155 N. W. 392; Johnson v. Holmes, 142 Minn. 54, 170 N. W. 709; Messerall v. Dreyer, 152 Minn. 471, 189 N. W. 446.

The evidence justified the finding that the bonds were not the kind the parties agreed upon and that their failure in this respect was the result of the deliberate acts of the appellant's agent who issued them. This agent was positively informed by both Forsythe and Sinclair that the bonds required were to cover the particular certificates and assure their payment at maturity. He was acquainted with the entire transaction. He knew that the old bonds were not subject to cancelation by the surety. He knew that the bonds in question contained the cancelation clause, contrary to the oral agreement. He must have known that Forsythe would not have accepted the bonds had he known that they contained the objectionable clause. He must have understood that both Sinclair and Forsythe believed that the bonds had been drawn and executed in accordance with the oral agreement. He took a contract from Sinclair indemnifying appellant against loss as surety on the bonds. As a witness called by appellant, he testified that, when he delivered the bonds, he knew they were not what Forsythe or Sinclair wanted. We see no escape from the conclusion arrived at by the trial court that appellant's agent acted fraudulently and that the appellant is liable for his acts.

The attempted cancelation of the bonds on November 4, 1921, considered in connection with the fact that appellant had full knowledge

that the Hartford Company had declined to longer carry the risk because of the financial condition surrounding the Montana banks, and the further fact that appellant required the Sinclair Company to indemnify it against loss, considered in connection with the entire record, made it a question for the jury to say whether appellant knew of the insolvent condition of such banks at that time. We are of the opinion and hold that the judgment should stand, including the taxation of costs and disbursements.

Affirmed.