## PREFERRED ACC. INS. CO. OF NEW YORK v. ONALI et al.

No. 329 Civil.

District Court, D. Minnesota, Fourth Division.

Feb. 20, 1942.

Ernest E. Watson, of Minneapolis, Minn., for plaintiff.

E. L. Rosenbloom, of Minneapolis, Minn., for defendant Onali.

Olof L. Bruce, of Minneapolis, Minn., for defendants Hilma Sarvie and Harold J. Sarvie.

NORDBYE, District Judge.

Briefly, the situation is as follows: On May 1, 1937, defendant Onali made an application for an automobile liability insurance policy in plaintiff company, and in connection therewith applied to the selected risks division for merit rating. The appli-cation was approved and a special merit rating policy, No. 05393, was issued and the required premium was paid. Apparently, the special merit rating entitled the applicant to a special type of policy with a lower premium by reason of the fact that his automobile was to be driven only in private use and for the reason that his prior record with reference to accidents, arrests, etc., was such that he became a preferred risk. Policy No. S. M. R. 05393 contained the following provision under Part III—Exclusions: "This agreement shall exclude any obligation of the company * * (5) for such bodily injury to or death of any employee of the Assured while engaged in the business of the Assured (other than domestic employment) or in the operation, maintenance or repair of the automobile, or to any person to whom the Assured may be held liable under any Workmen's Compensation Law; or for such bodily injury to or death of an Assured or any relative of an Assured."

It appears that the form of the special merit rating policies issued by the plaintiff company was changed in the month of June or July, 1937, whereby the exclusion clause referred to above was modified, so that the latter portion thereof, as found in defendants' Exhibit 1, reads as follows: " * * * Or for such bodily injury to or death of an insured or to any of the following relatives of any person insured hereunder: husband or wife; child or children; father or mother; brother or sister; or father-in-law or mother-in-law." Otherwise, the two forms of policies are identical.

It is plaintiff's position that competition suggested the change. In any event, no S. M. R. policies after July, 1937, were issued by the plaintiff company with the exclusion clause in the language contained in the original policy which was issued to the defendant Onali. It is uncontradicted that that form of exclusion provision was abandoned and that all special merit rating policies thereafter issued contained the specific definition of the word "relative" as stated above. The company did not disclose to Onali the change made in its special merit rating policies until after this suit was instituted. On May 1, 1938, Onali paid the required premium and obtained coverage for another year, and on May 1, 1939, he again paid his premium and obtained a renewal certificate in the form of plaintiff's Exhibit C, which purports to renew

from May 1, 1939, to May 1, 1940, policy No. S. M. R. 05393. This reads: others, as guests his sister-in-law, one Hilma Sarvie, she being the sister of

"Renewal Certificate 1. Renewal No. 6694

"The Preferred Accident Insurance Company of New York and the Named Insured Jerry Onali under Policy No. SMR 05393 in consideration of the payment of the following additional premium do hereby mutually agree that said policy is renewed for the period stated below, it being further agreed that during the term of this renewal the automobile, as defined in the policy, the points of principal use and garaging, the policy period, the limit of the Company's liability for each such automobile and the premium therefor shall be as follows, and not as shown in the policy, all other terms, provisions and conditions of the policy remaining unchanged.

| The automobile as in the policy defined | | | | | Premiums | |
| --- | --- | --- | --- | --- | --- | --- |
| Trade Name and Model | Serial and Motor Number | | Year Model Number of Cylinders | Type of Body | (A) Bodily Injury | (B) Property Damage |
| Packard 120 | 1092P21139 X132571 | Yr Cyl | 1937 8 | Touring Sedan | $36.96 | $5.60 |

"The automobile is principally used and garaged: Principally used in Minneapolis, Minnesota. Garaged at No. 614 Girard Avenue No., Minneapolis, Hennepin County, Minnesota.

"Policy Period, Limit of Risk and Premium

"The policy period shall be from May 1st, 1939, to May 1st, 1940, at twelve and one minute o'clock A. M., standard time, unless previously terminated by cancellation.

"The insurance afforded is with respect to the following coverages. The limit of the Company's liability against each such coverage shall be as stated herein subject to all of the terms of the standard form of Motor Vehicle Liability Policy as now issued by this Company.

| Coverages—Each as Defined in the Policy | Limits of Liability |
| --- | --- |
| Coverage A—Bodily Injury Liability | $10,000 each person and subject to that limit for each person $10,000 each accident |
| Coverage B—Property Damage Liability $5,000 each accident | |
| The additional premium is Forty-six and 56/100 Dollars ($ 46.56) | |

"Not valid until countersigned by an officer or duly authorized agent of the Company.

"The Preferred Accident Insurance Company of New York

"Frank Schaap Countersigned by Edwin B. Ackerman
Secretary M. H. Underwood President
Authorized Agent

"Date of Issue
5/1/39"

It was this contract existing between the parties during this period that gives rise to the controversy which is the subject of declaratory relief.

On August 27, 1939, Onali was driving the car in question, having with him, among Onali's wife. An accident occurred in which it is claimed that Hilma Sarvie was injured through the negligence of defendant Onali. Suit was thereafter brought by Hilma Sarvie and her husband, Harold J. Sarvie, seeking to recover damages al-

leged to have been sustained as the result of said accident. The plaintiff interposed an answer and assumed to defend, but later withdrew and refused to proceed with the defense. This suit has not been reached for trial. It is plaintiff's position that the contract in force between the parties was in the terms and conditions as stated in the original policy S. M. R. 05393, and asks this Court, under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, to declare that, in that Hilma Sarvie is a sister-in-law of the insured, she is a relative as that term is used in the policy; that therefore there is no coverage and no duty on the part of the plaintiff to defend the action pending; and that no liability on the part of the plaintiff exists to indemnify defendant Onali on account of any damages which the Sarvies may recover.

This case was tried on November 13, 1940, and briefs were filed on or before December 1, 1940. Before any decision was reached in the matter, and after the case had been submitted as hereinbefore stated, the defendant Onali, by written motion on January 18, 1941, asked leave to amend and supplement his answer. In brief, this defendant seeks to reform the last part of Section 5 of Part III of Policy No. S. M. R. 05393 so that the exclusion clause therein reads the same as the exclusion clause in the S. M. R. policies issued by the plaintiff company after July, 1937, it being defendant Onali's position in this regard that the plaintiff having abandoned the language used in the exclusion clause in the first policy, issued on May 1, 1937, and having adopted the form used in defendants' Exhibit 1, wherein the word "relative" was defined as hereinbefore stated, it was the intention of the parties that all of the insureds entitled to special merit rating policies should receive the benefit of the new form of policy which was issued to this class. That when renewal certificates were issued on May 1, 1938, and May 1, 1939, assuming to extend the coverage granted to the defendant Onali, it is contended that he should have, by virtue of his renewal and payment of premium, the form of S. M. R. policies which were being issued to this preferred class; that mutual mistake of the parties caused the failure to provide Onali's contract with the exclusion provision found in the S. M. R. policies; and that therefore policy No. S. M. R. 05393 should be reformed so as to comply with the intention of the parties. The plaintiff

objects to the amendment, and among other grounds it asserts that the proffered amendment is not timely; that the facts alleged in the proposed amendment constitute in effect a cross-bill and the facts thereof were known to the defendant Onali at the time that the original answer was served; and that the evidence will not warrant any finding of mutual mistake or fraud so as to permit the granting of the relief prayed for.

█ The evidence at the trial indicated that Onali lost or misplaced his original policy and was unable to produce it in Court. It apparently was missing at the time the accident happened. When he served his answer on July 20, 1940, he denied that the policy contained the exclusion clause relied upon by the plaintiff. As far as the record indicates, it was not until October 7, 1940, that information came to him as to the change that was made in July, 1937. It was on this date that depositions were taken of plaintiff's employees at the home office which tend to establish that the original policy issued to Onali on May 1, 1937, contained the exclusion clause now relied upon by the plaintiff, and it was in these depositions that it first appeared that, beginning in July, 1937, the company abandoned the form followed in S. M. R. 05393 and adopted the form as contained in defendants' Exhibit 1. At the trial, the controversy was primarily directed to the type of policy which was actually issued to Onali. Furthermore, there was litigated at the trial the definition of the word "relative" as the same appears in policy No. S. M. R. 05393, and the question as to whether plaintiff, by its conduct in first assuming to defend, was estopped to deny liability under the Minnesota decisions. Whether defendant Onali was entitled under the showing to the benefit of the form of policy issued after July, 1937, was at least impliedly litigated. Consequently, it would seem that the question of allowing the amendment rests entirely within the Court's discretion, and no possible prejudice would result to the plaintiff by the allowance thereof. Both plaintiff and defendant have waived the right to produce any further testimony if the Court allows the amendment, and it has been agreed that plaintiff's reply will be construed as a denial of all new matter in the proposed amendment. Liberality in allowing amendments under the new rules is now well established. I see no reason why the Court should not

permit the amendment, and it therefore will be allowed. An exception is reserved to the plaintiff.

First will be considered the merits of plaintiff's claim for declaratory relief on the assumption that the policy to be declared is the contract as set forth in policy No. S. M. R. 05393. There are no provisions in this policy itself that throw any light upon the intention of the parties as to the interpretation to be given to the word "relative" as used in the exclusion clause found therein. Admittedly, the word "relative" may at times be limited to blood relatives; that is, relatives by consanguinity, and then again, it may be used so as to embrace relations by affinity as well. Presumably, the term "relative", if taken literally, may include an endless group of in-laws and their affinities. If the third cousin of a daughter of Onali's sister-in-law was injured, in a broad sense and according to some usages and family customs, such person would be a relative. The ridiculous lengths to which such a conception of the word "relative" might lead one seems apparent. If tables of genealogy were examined, some remote relation might be found to exist among most of the people in a particular community. Is it not reasonable, therefore, in view of the ambiguity of this term and the difficulty of its interpretation, to restrict the term to blood relatives? Certainly, there are no well-defined limits if the word is to be given its broadest application. It must be recognized that the contract, in view of the indefiniteness and uncertainty which arises as to the construction of the term, should be construed in favor of the insured and limited accordingly, but if this view is not tenable, and the word must be given a literal interpretation so as to include all relatives by affinity as well as consanguinity, then it may be that plaintiff is entitled to relief unless the defendant Onali is entitled to the aid of equity in reforming the contract to conform with the apparent intent of the parties.

At the outset, in discussing the question of defendant Onali's right to a reformation of the contract, it is generally recognized that before a court of equity will reform a written instrument, it must appear that there was an antecedent agreement and that the writing failed to express the true intention due to a mutual mistake, or a mistake on one side and fraud or inequitable conduct on the other. Further, these facts must appear by clear and not doubtful evidence. Norman v. Kelso Farmers' Mutual Fire Ins. Co., 114 Minn. 49, 130 N.W. 13. Since there is no dispute as to the facts, the problem resolves itself into a sound and rational construction of the admitted circumstances. Onali was accepted as a preferred risk and entitled to the special merit rating policy issued by the plaintiff company. The selected risks division had approved his status as such and he occupied that status throughout the entire period during which he was covered by plaintiff's insurance. The agent who renewed the policy was plaintiff's authorized agent as the renewal certificate will disclose. It is fair, therefore, to reason that Onali, knowing he was entitled to a special merit rating policy, left it entirely to the agent to forward to him the policy which the company provided for this class of insureds. It is also reasonable to find from the evidence that he expected, and he had a right to expect, that the special merit rating policy to be issued to him would be a policy with the same terms and conditions as that issued to others entitled to a merit rating. When he received his original policy as of May 1, 1937, it was the form issued to all insureds approved by the selected risks division. There is no evidence or claim that the company intended to discriminate against Onali with reference to his insurance. There is no reason suggested why he should not receive the benefits to which all policy holders of his class were entitled. When he renewed his policy in 1938 and paid the required premium therefor as a selected risk, the company would have been guilty of inequitable conduct if, without good reason therefor, it palmed off on him a form of policy containing the exclusion clause then abandoned, when under the rules of the company he was entitled to a policy with a provision more favorable to him. The charitable view to take under the circumstances is to find that the company, through mistake and inadvertence, failed to provide Onali with the renewal containing the provisions of the new form of policy when he renewed his policy in 1938 and 1939. Either the company, by failure to disclose the change, is guilty of inequitable conduct, or it failed through mistake to include the new provision in the renewed contract. Whatever view one may take, the contract in equity should be reformed.

True, an insurance company in absence of statute or charter restriction may bargain with an insured for any type of policy which may be agreed upon between them. But it was the intention in the instant situation to furnish the insured a policy to which he was entitled as one approved by the selected risks division. This is undoubtedly what the parties must have intended in 1938 and 1939 when he paid his premiums for the ensuing year. That Mr. Underwood, plaintiff's authorized agent, so intended cannot be gainsaid. He had no policy forms in his office. He merely took the application for approval by the selected risks division and forwarded it to the home office. He intended that Onali should receive the type of policy which was issued to all members of this class. That he intended the insured to receive the same type of contract as the company issued to these approved risks when the renewals were taken seems apparent from the evidence. To assume that Underwood intended to saddle Onali with this impractical and indefinite exclusion provision when the company had abandoned it, is clearly untenable in light of Underwood's testimony. Furthermore, Underwood, as plaintiff's agent, was charged with knowledge of the changed policy accorded to the selected risks. He stated in substance that if he had known of the type of exclusion clause found in policy No. S. M. R. 05393, he never would have sold the policy in the first place, and he believed, so he stated, that the original policy did contain a specific recital of the relatives excluded. In this he was mistaken, but that he intended to provide Onali with the going contract for this preferred class must be conceded. If we consider a hypothetical situation, it may be that the present problem will be somewhat clarified. Assume, for instance, that a policy accorded to applicants in the selected risks division contained a restriction that if the car was driven out of the particular state, it was not covered by the policy. Later, the company abandoned this restriction and all policies thereafter contained no limitations on travel within the United States. However, an insured who had taken out an original policy containing the restriction, and thereafter had obtained a renewal certificate, comparable to the one issued by Mr. Underwood, and continued to pay his premiums for a period of eight or nine years, according to the company's construction he would, notwithstanding the abandonment of the old form, be restricted with the travel limitation re-regardless of the fact that the insured had not been informed of the abandonment of the old policy and notwithstanding the fact that, according to the rules of the selected risks division, all approved risks of that class were entitled to receive a policy without travel restrictions. Under the recited circumstances, it would seem that the mistake on the part of the insured and the mistake or inequitable conduct on the part of the insurer would stand out in bold relief and that equity would be quick to reform such a contract in accordance with the intention of the parties. The instant situation does not differ.

Undoubtedly, like most insureds, Onali relied upon the authorized agent's assurance that he was obtaining the protection afforded to insureds of this clase. Legal niceties should not obscure the plain equities of the situation, and a reasonable interpretation of the admitted circumstances amply justifies a court of equity in granting relief by way of reformation. The Minnesota courts have consistently protected the rights of insureds where mutual mistakes have occurred in the issuance of an insurance contract. The following statement from Consolidated Lumber Co. v. Mercury Ins. Co., 189 Minn. 370, 374, 249 N.W. 578, 580, is illustrative: "The courts have rather zealously guarded the rights of the insured and have indulgently overlooked the careless way in which the ordinary person leaves his rights to the protection of the insurer who cannot be unaware thereof. The practice is very common for the insured to leave the matter of his insurance very largely in the care and protection of the insurer, who usually better understands his requirements and the opportunities that are available. There is plenty of precedent to show that the courts have been liberal in the reformation of insurance contracts, to carry out the intention of the parties, which by reason of a mutual mistake has not been correctly reduced to writing in the policy." (Citing cases.)

■ It may be urged that Onali, being ignorant of any change in the form of policy issued to the preferred risks, made no mistake in that he was content to receive the protection afforded him by the old form of policy. It is undoubtedly true that Onali was not different from the average insured and was unacquainted with the numerous exclusion provisions and conditions which

appear in the small type. He was unaware that he was not receiving the current special merit rating policies during the years 1938 and 1939. However, he expected to receive, and thought he was receiving, the type of policy to which, as a selected risk, he was entitled. Not only did he commit a mistake in accepting a contract of insurance no longer applicable to his class, but the authorized agent was also mistaken in assuming that he was affording Onali with a current special merit rating policy, and the company, in accepting the renewal as made out by its agent, either made a mistake in continuing its records so as to indicate that the original policy, without the benefit of the change, was in full force and effect, or if this was not the result of the mistake, then in construing the relationship between an insurance company and an insured, it is chargeable with inequitable conduct. Nor is Onali to be deprived of any equitable relief because of any negligence or laches on his part. There is no showing that the plaintiff is prejudiced thereby. Norman v. Kelso Farmers' Mutual Fire Ins. Co., supra; Central State Bank v. Royal Indemnity Company, 167 Minn. 494, 210 N.W. 66. In the latter case, the court stated (167 Minn. at page 500, 210 N.W. at page 69) : "While equity, as a general rule, will not extend relief to those who, through their own negligence, have sustained unfair treatment to their injury, yet different principles apply to insurance contracts where the authorized agent of the insurer, in preparing the application and in issuing the insurance, is, as in this case, the acknowledged cause of the error and injury which in no way is chargeable to the insured."

The plaintiff urges that when an insurer agrees to renew a policy, the insured has a right to expect, and the insurer is obliged to provide, a policy which will contain the same terms and conditions. As a general principle of insurance law in considering a specific contract between an insurer and an insured, this is undoubtedly true, but that principle should not militate against Onali's right to receive the contract with the terms and conditions accorded to all approved applicants by the selected risks division. Common fairness between an insurer and an insured should permit no other conception of the rights of the parties.

Having determined, therefore, that the policy should be reformed, it necessarily follows that a finding must be made that the Sarvies are not included within the exclusion provision, and that therefore plaintiff is not entitled to the declaratory relief which it seeks. On the contrary, a finding should be made declaring that the policy as reformed covers the accident referred to, and that plaintiff under its contract is obliged to defend said action and to indemnify the insured on account of any damages recovered therein, and further, that the insured has performed no act, nor is he guilty of any conduct which has deprived him of his rights under the policy. Some reference is made in the testimony as to an agreement by Onali to pay certain doctor's bills incurred by Mrs. Sarvie; however, it is the Court's opinion that such circumstances do not deprive the insured of his rights under the policy.

In view of the conclusions reached herein, it is not necessary to consider the contention of the defendants that plaintiff, by its conduct in first assuming the defense of the action brought by the Sarvies, is now estopped to deny liability under its policy. The defendant Onali may submit findings of fact and conclusions of law in accordance with the views expressed herein. An exception is reserved to the plaintiff.