ELSIE C. MOSIMAN v. JOHN W. RAPACZ AND ANOTHER. GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LTD., THIRD-PARTY DEFENDANT.

84 N. W. (2d) 898.

August 16, 1957—No. 37,104.

*Mahoney & Mahoney,* for appellant.

*Carroll, Thorson, Anderson & Cronan, Kleve J. Flakne,* and *Thomas J. Burke,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This action was first instituted by Elsie C. Mosiman, hereafter referred to as plaintiff, against John W. Rapacz and Barbara Rapacz, his wife, for damages sustained as the result of her falling on October 9, 1951, through a defective railing on the second floor of their premises at 1229 Washington Avenue North, Minneapolis.

Therein, John W. Rapacz, hereafter referred to as third-party plain-

tiff, interposed an action against General Accident, Fire & Life Assurance Corporation, Ltd., hereafter referred to as insurer, wherein he asked reformation of a public liability insurance policy issued by insurer on December 15, 1948, on the ground of mutual mistake. This policy extended liability protection during its term to Edward J. Rapacz and covered premises and their use described therein as "1231 Washington Ave. Minneapolis * * * Restaurant, Code 133s." Its reformation was sought so that its coverage would include the liability of third-party plaintiff arising from his ownership of a three-story building described as 1227, 1229, and 1231 Washington Avenue North, Minneapolis.

Third-party plaintiff sought judgment against insurer for all sums that might be adjudged against him in the action instituted by plaintiff on the ground that the policy as reformed covered such liability, and upon the further ground that insurer by its conduct after notice of the accident had waived its right to deny liability and was estopped from asserting that the policy did not cover any liability of his arising out of his ownership of 1229 Washington Avenue North. The difference between the premiums paid on the policy issued and the premiums which would have been due if the policy included the coverage claimed was tendered to and refused by insurer preliminary to trial.

At the close of the evidence, a special interrogatory was submitted to and answered by the jury as follows:

"Question: Did General Accident, Fire & Life Assurance Corporation, Ltd., so conduct itself after the accident of October 9, 1951, by representations made by it to John W. Rapacz, together with conduct on its part as to cause him reasonably to rely upon that company to assume full charge and control of any investigation, settlement negotiations and the defense of any lawsuit arising out of the accident that might be brought against him by Elsie C. Mosiman?

"Answer: Yes."

Based thereon and upon the evidence submitted, the trial court determined that by its conduct between October 9, 1951, and March 26, 1953, insurer had reasonably caused third-party plaintiff to rely upon it to assume full charge and control of the investigation, settlement negotiations, and defense of plaintiff's action to his detri-

ment and accordingly that it was estopped to deny liability under the policy in relation to the accident of October 9, 1951.

It further determined that the policy be reformed so that the name of insured therein read "Edward J. Rapacz and John W. Rapacz"; so that the location of the premises covered thereby read "1227, 1229 and 1231 Washington Avenue North, Minneapolis, Minnesota"; and so that the purpose for which the premises were to be used read "Restaurant, Code 133s, and rental for business and residence"; and that insurer defend plaintiff's action and pay all sums which third-party plaintiff might become obligated to pay therein within the limits of the policy.

The evidence in the light most favorable to third-party plaintiff disclosed the following facts: Since 1942 John W. Rapacz and Barbara Rapacz, his wife, have been the owners of a three-story building which includes three commercial rentals described as 1227, 1229, and 1231 Washington Avenue North, Minneapolis, above which there are apartments on the second and third floors. At the times involved here, Fred B. Thielen Insurance Agency, hereafter referred to as Thielen, occupied 1227 Washington Avenue North; a barber shop occupied 1229 Washington Avenue North; and third-party plaintiff operated a restaurant and bar at 1231 Washington Avenue North until April 1950, at which time he transferred them to his son, Edward J. Rapacz.

In November 1942 third-party plaintiff ordered an "Owner's, Landlord's and Tenant's Public Liability Policy" for the building from Thielen, who represented insurer. Thielen thereupon requested insurer to write such a policy to cover the entire building as ordered. The insurer thereupon sent its representative, Grant, to inspect the premises. He examined the entire building, including the upper floors, the stores, and a parking lot adjacent thereto. Shortly thereafter, insurer issued and delivered a three-year owner's, landlord's, and tenant's public liability policy to third-party plaintiff, wherein the premises covered were described as 1231 Washington Avenue North, the business as "Restaurant Code 133s," and the named insured as John Rapacz. At that time, Thielen advised third-party plaintiff that the policy delivered covered the entire building; and in reliance thereon third-party plaintiff placed it in his files without reading its provisions.

Thereafter, upon expiration dates, successive renewals of this policy,

each for a three-year period, were placed in effect by insurer and delivered to and paid for by third-party plaintiff. Each of such renewals, including the one in issue here, described the premises, purpose of business, and named insured in the same language as did the original policy. In April 1950 third-party plaintiff requested Thielen to issue an endorsement adding the name of his son, Edward J. Rapacz, as an insured, at that time explaining to Thielen that he had turned over the restaurant business to his son. Insurer, however, issued an amendment to the policy which, without the knowledge of third-party plaintiff, excluded him as an insured and named Edward J. Rapacz as the sole insured. The latter has never had any interest in the real property at the addresses described, except for his operation of the liquor and restaurant business at 1231 Washington Avenue North.

On October 10, 1951, third-party plaintiff reported to insurer that Elsie C. Mosiman, plaintiff herein, and at that time a lessee of an apartment on the second floor at 1229 Washington Avenue North, had fallen to the ground from a second-floor porch thereof as the result of a defective bannister thereon. Insurer thereupon sent an investigator to interview third-party plaintiff. He advised him not to discuss the accident with anyone and told him that insurer would "take care of it." Thereafter, on several occasions investigators of insurer called upon plaintiff and other witnesses to get their versions of the accident. On one such occasion its representative discussed settlement of the action with plaintiff. On October 9, 1952, approximately a year after the accident occurred, it caused plaintiff to be examined by its physician.

During this investigation insurer took a number of photographs of the rear of the premises to show the porch from which plaintiff fell. At the trial its claims manager produced a memorandum file which included the photographs and which indicated that at all times insurer was aware that the accident had occurred at 1229 Washington Avenue North.

On March 11, 1953, 17 months after the accident, insurer received from third-party plaintiff the summons and complaint in the Mosiman action which it then delivered to its attorneys. On March 25, 1953, the latter wrote third-party plaintiff, advising him that they had received the summons and complaint and that they would interpose an answer on

his behalf. They also informed him that, since the judgment sought exceeded the limits of his policy, he could, if he desired, employ other counsel to protect him against claims in excess of the policy limits. On March 26, 1953, they wrote him again, this time advising him that he did not have coverage on the premises from which plaintiff fell and that insurer would not defend her action against him; and returning the summons and complaint. This was the first time that third-party plaintiff had been advised by insurer that the policy did not cover 1229 Washington Avenue North, or that it would not undertake to defend the action.

The court determined that on November 23, 1942, third-party plaintiff and insurer had entered into an agreement whereby the insurer was to provide a public liability insurance policy to cover the entire premises at 1227, 1229, and 1231 Washington Avenue North; that when the policy was drafted and delivered in November 1942, due to a mutual mistake of the parties, its coverage was limited to 1231 Washington Avenue North, Minneapolis, Minnesota, for restaurant only; and that this policy with the erroneous descriptions and limitations of use was thereafter renewed for a three-year period on December 7, 1945, and again for a three-year period on December 17, 1948.

The court further determined that in April 1950 third-party plaintiff had requested that his son, Edward J. Rapacz, be added as an insured under the policy but that due to the mutual mistake of third-party plaintiff and insurer his name was substituted for that of third-party plaintiff as the sole named insured in the policy.

It further found that when such policies were delivered to third-party plaintiff he had put them aside without reading them because of his reasonable belief that all of his premises were covered thereby as insurer's agent represented; and likewise that he had not read the endorsement wherein his son was described as the sole named insured under the policy because of his reliance upon the representations of such agent that both he and his son were covered thereby. As indicated above, based thereon the trial court ordered judgment for reformation of the policy to comply with the agreement of the parties.

■ To reform a written instrument on the ground of mutual mistake, the evidence thereof must be clear, persuasive, and convincing,

and the trier of fact must be satisfied to the degree of certainty stated that the evidence is sufficient to justify an affirmative finding on this issue. In applying this rule, we are, of course, bound by the general principle that the trial court's findings will not be disturbed unless they are manifestly contrary to the evidence. Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 246 N. W. 477; Keogh v. Sharon Township Mutual Fire Ins. Co. 195 Minn. 575, 263 N. W. 601.

■ It appears that there is ample evidence to support the trial court's finding of mutual mistake in drafting the policy agreed upon, as to the premises covered thereby; the uses thereof; and the named insured therein. There is substantial evidence that third-party plaintiff and insurer's agent orally agreed that insurer was to furnish protection in the form of an *owner's, landlord's, and tenant's public liability policy* for the entire structure. There is the testimony of third-party plaintiff that he had requested such insurance from insurer's agent. There is the testimony of insurer's agent that such request had been made and in turn was conveyed to insurer. There is evidence that insurer sent one of its inspectors to the structure to pass upon the risk to be covered; that he inspected not only the premises at 1231 Washington Avenue North, but also the premises at 1227 and 1229 Washington Avenue North, including the second and third floors thereof and the adjacent parking lot. Thereafter, the insurer issued and delivered an *owner's, landlord's, and tenant's public liability policy* to third-party plaintiff, surely not required if the only protection contemplated was for the operation of a restaurant at 1231 Washington Avenue North by its owner.

When the policy was delivered to third-party plaintiff, there is evidence that insurer's agent advised him that it covered the entire building and that in reliance upon such assurance he placed it in his files without reading its terms, and that a similar procedure was followed upon the delivery of each of the renewal policies. With reference to substituting Edward J. Rapacz for third-party plaintiff as the named insured in the policy, there is the testimony of an employee of the insurer's agent that third-party plaintiff had requested that his son be named as an *additional* insured and not that he be substituted for the insured in the policy. The policy as reformed by insurer otherwise con-

tinued as an *owner's, landlord's, and tenant's* policy, a type not likely to be issued when Edward J. Rapacz could be considered neither an owner or a landlord at 1231 Washington Avenue North. All of such evidence seems amply sufficient to support the trial court's finding that the oral agreement between the parties contemplated a public liability insurance policy for the entire building, in which third-party plaintiff, as owner and landlord, was the named insured; and in which Edward J. Rapacz was an additional insured, and that because of a mutual mistake the policy was issued with the erroneous description and limited usage therein; as well as the subsequent erroneous omission of third-party plaintiff as a named insured thereunder.

■ Insurer contends that the insured is bound by the provisions of his policy because of his acceptance and retention of it for a substantial period without objection, even though it is conceded that at no time did he read its provisions. Based upon the previous holdings of this court, we must come to a contrary conclusion. It is well settled that an insured has the right to presume that a policy received by him is drafted in accordance with the agreement made between him and his insurer; and that his failure to read its provisions because of his reliance upon this presumption does not necessarily bar his subsequent action to have it reformed even after a loss if its terms are at variance with such agreement, London Guarantee & Acc. Co. Ltd. v. Board of Education, 166 Minn. 295, 207 N. W. 634; and if his delay in seeking reformation is not prejudicial to the insurer. Preferred Acc. Ins. Co. v. Onali (D. Minn.) 43 F. Supp. 227. The propriety of granting relief in such cases ordinarily is discretionary with the trial court. As stated in the Keogh case (195 Minn. 578, 263 N. W. 602):

"* * * Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments."

See, also, Norman v. Kelso Farmers Mutual Fire Ins. Co. 114 Minn. 49, 130 N. W. 13. Applying these principles in the instant case, it seems clear that, since the failure of third-party plaintiff to more promptly examine the policy and institute an action for its reformation was not prejudicial to the insurer, such delay did not constitute a bar

to his present action brought for that purpose.

■ Because the evidence to support the trial court's determination on the issue of reformation is clear and convincing, its decision is affirmed on this issue. Accordingly, the additional issues relating to waiver and estoppel need not be considered or determined here.

Affirmed.