MARY GABRELCIK, d.b.a. FRIDLEY CAB COMPANY, v.
NATIONAL INDEMNITY COMPANY AND OTHERS.

131 N. W. (2d) 534.

November 13, 1964—No. 39,262.

*Schermer & Gensler* and *Irvin E. Schermer,* for appellant.
*J. Bertram Press* and *Edward Coleman,* for respondent.

ROGOSHESKE, JUSTICE.

Action for a declaratory judgment to determine whether the "Temporary Substitute Automobile" provision of an automobile liability policy afforded protection to plaintiff during her operation of a nondescribed vehicle. Defendant National Indemnity Company appeals from a judgment in favor of plaintiff. The question of the coverage of the policy was submitted upon stipulated facts.

Plaintiff and her husband, Frank Gabrelcik, are residents of the

same household. She operates a one-car taxi business under the name of Fridley Cab Company under a license from the city of Fridley. Her husband operates a used-car lot and service garage under the name of Frank's Used Cars. Both businesses are operated individually from the same premises. The policy named "Mary Gabrelcik D/B/A Fridley Cab Company" as the insured and specifically described a 1952 Plymouth automobile as the insured vehicle. The declarations of the policy revealed that the automobile was to be used for commercial purposes as a taxi. Plaintiff was required to file, and did file, a copy of the policy with the city to secure her license to operate a taxi. The Plymouth automobile was owned by plaintiff's husband and registered in the name of Frank's Used Cars. It was, however, used exclusively by plaintiff in her taxicab business until February 13, 1962, when it became disabled and was taken to her husband's garage for repairs. A 1953 Ford automobile, owned by her husband and also registered in the name of Frank's Used Cars, was loaned to plaintiff for temporary use in her business. This vehicle was a part of her husband's stock of used cars. While the Plymouth was still disabled, the Ford automobile was involved in an accident when being used as a taxicab. A passenger in the taxicab claimed injury and instituted an action against plaintiff for damages.

The action before us was commenced upon the claim that the policy provided coverage for the Ford automobile under its "Temporary Substitute Automobile" clause, which extended coverage to the insured for the operation of—

"* * * an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The defendant insurer refused coverage on the ground that the Ford was not a "Temporary Substitute Automobile" within the meaning of the foregoing clause since the vehicle was owned by a spouse of the named insured who resided in the same household.

The trial court found for the plaintiff upon the grounds that borrowing the vehicle represented a commercial transaction between the

husband and wife; that the insurer's risk was not increased thereby; and that Frank's Used Cars is a separate legal entity so that the ownership of the vehicle by the husband does not come within the meaning of the clause excluding coverage on a vehicle owned by the spouse of the named insured.

There are two obvious purposes for the language of the policy which excludes coverage on a substituted automobile if it is owned by the spouse of the named insured who resides in the same household. One purpose is to prevent the same policy from being used to provide coverage for vehicles other than those for which a premium has been paid. The second purpose is to avoid the potentiality of factual disputes, as in the case before us, concerning coverage for other vehicles that are owned by the named insured's spouse.[1]

We recognize that the overall purpose of a substituted-vehicle clause in an insurance policy is to benefit the insured and that the clause is to be construed liberally in favor of the insured.[2] However, the insurer is entitled to rely upon language of the policy designed to accomplish reasonable and justifiable objectives.[3]

The insurance contract represents the entire agreement between the parties. When the language of the policy is unambiguous, courts are not at liberty to use a process of judicial construction to graft into the plain language of a policy an intention to afford coverage when no such intention appears from the language of the policy or otherwise.[4] Any construction of the policy must do no more than give effect to the plain meaning of the language.[5]

---

[1]See, Utilities Ins. Co. v. Wilson, 207 Okla. 574, 251 P. (2d) 175.

[2]See, Allstate Ins. Co. v. Roberts, 156 Cal. App. (2d) 755, 320 P. (2d) 90; Central Nat. Ins. Co. v. Sisneros (D. N. Mex.) 173 F. Supp. 757; Lloyds America v. Ferguson (5 Cir.) 116 F. (2d) 920.

[3]See, Harte v. Peerless Ins. Co. 123 Vt. 120, 183 A. (2d) 223 (substitution clause not to be unreasonably extended to materially increase risk contemplated by insurer).

[4]See, Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19; Simon v. Milwaukee Auto Mutual Ins. Co. 262 Minn. 378, 115 N. W. (2d) 40.

[5]Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine

Plaintiff does not contend that the "Temporary Substitute Automobile" clause is ambiguous, as such a claim would be unreasonable in view of the language of the clause. Moreover, plaintiff concedes that if the Ford automobile were registered in the name of her husband rather than in the name of Frank's Used Cars, the clause would exclude coverage for the automobile in question. Thus, plaintiff by her choice presents the narrow issue of whether the manner of registering permits the substitute vehicle to be regarded as not owned by plaintiff's spouse within the contemplation of the policy.

We fail to see how the fact that plaintiff's spouse is the owner of the vehicle in question is changed for insurance purposes by the manner in which it is registered with the state. Whether the vehicle is registered in the husband's name or in the name of the business which he owns and operates as a sole proprietorship, the result is the same; namely, that this vehicle was owned by the insured's spouse who resided in the same household.[6] The only plausible theory upon which the policy could be held to afford coverage is that under the circumstances it should be declared void as against public policy. The provisions of the city ordinance under which a copy of the policy was filed are not before us. Plaintiff neither advanced this theory below nor here and we find no cases involving similar facts where such a theory was applied. Were the action brought by the injured party after judgment, considerations of public policy might well dictate a different result.[7]

---

Ins. Co. 235 Minn. 243, 50 N. W. (2d) 629; Rein v. New York Life Ins. Co. 210 Minn. 435, 299 N. W. 385.

[6]Although there are some decisions that suggest certain courts would reach a result different from ours in the instant case, we do not consider their reasoning controlling here. Moreover, they may be readily distinguished by their peculiar fact situations. See, e. g., St. Paul-Mercury Ind. Co. v. Heflin (W. D. Ark.) 137 F. Supp. 520; Farley v. American Auto Ins. Co. 137 W. Va. 455, 72 S. E. (2d) 520, 34 A. L. R. (2d) 933.

[7]As between actions by the insured and the injured person, different considerations are present when the policy of insurance is required as a condition for obtaining a municipal license to operate a vehicle for hire. In such a situation, as here, there is considerable authority holding that

On the narrow question presented and the arguments advanced by plaintiff we are asked to ascertain the intention of the parties to the contract from the language of the clause in question. No one associated with defendant was called to testify. The record is silent as to defendant's knowledge of the nature of plaintiff's business, the requirements of the city ordinance, or as to who filed the policy with the licensing authority. While the stipulated facts strongly suggest that in fairness the defendant ought to afford plaintiff the insurance protection she believed she had purchased, the contractual language restricting coverage when applied to the relevant facts compels the conclusion that any vehicle owned by plaintiff's spouse was not thereby intended to be covered. Even though the policy covered a commercial operation and no prejudice resulted through simultaneous operation of two vehicles, settled principles of contract law require us to give effect to the plain meaning of the language of the policy.

Reversed.

---

after the injured party has obtained a judgment against the insured, if it remains unsatisfied, he may collect it from the insurer and is not subject to policy defenses that the insured would be. The rationale is that the licensing authority requires insurance coverage for the public's protection and this rule prevents thwarting that objective. Royal Ind. Co. v. Olmstead (9 Cir.) 193 F. (2d) 451, 31 A. L. R. (2d) 635; Kruger v. California Highway Ind. Exch. 201 Cal. 672, 258 P. 602; Pan-American Cas. Co. v. Basso (Tex. Civ. App.) 252 S. W. (2d) 505; Gillard v. Manufacturers Ins. Co. 93 N. J. L. 215, 107 A. 446; Ott v. American Fidelity & Cas. Co. 161 S. C. 314, 159 S. E. 635, 76 A. L. R. 4; Annotations, 76 A. L. R. 23, 231, and 123 A. L. R. 950, 991. Most of these cases have involved the insured's violation of the policy's requirements that he give notice of an accident or notice of the filing of an action or that he cooperate with the insurer in any legal action. The policy behind the rule would seem to suggest that the insurer's defense asserted here would not be good in an action between the insurer and the injured person. For reasons not apparent from the record, the injured passenger, Donna Sarazin, and her husband, Frank Sarazin, were joined as defendants to this action, but they filed no responsive pleading seeking affirmative relief. Their action seeking damages from plaintiff, her husband, and others has been filed, but the status of that action is not disclosed by the record.

KNUTSON, CHIEF JUSTICE (concurring).

I concur for the simple reason that there is no ambiguity in this policy and the dissent writes something into the policy that is simply not there. People have a right to contract as they see fit in the field of insurance as elsewhere and it is not our prerogative to rewrite the contract for them after a loss has occurred.

SHERAN, JUSTICE (concurring specially).

The only issue presented by the appeal is whether the 1953 Ford was *owned* by the spouse of the named insured at the time of the accident. It was, unless the facts that it (a) was registered in the name of Frank's Used Cars, and (b) was part of a stock acquired for sale in the husband's business make a difference. In my opinion, the ownership of the vehicle by the husband could not be affected by the use of a business style or by the purpose for which the car was acquired.

A contract which does not express the intent of the parties can be reformed. See, Gartner v. Gartner, 246 Minn. 319, 74 N. W. (2d) 809; Mosiman v. Rapacz, 250 Minn. 464, 84 N. W. (2d) 898; Preferred Acc. Ins. Co. v. Onali (8 Cir.) 125 F. (2d) 580, affirming (D. Minn.) 43 F. Supp. 227. Even without reformation, a person damaged by reason of the ownership and maintenance of the vehicle may have rights against the insurer which will not be affected by this decision. Consequently, I do not believe that there are any considerations of public policy which compel the declaratory judgment sought by the plaintiff.

MURPHY, JUSTICE (dissenting).

I must respectfully dissent from the majority opinion. It denies to plaintiff the insurance protection for which she paid. We have said, "Liability insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them." Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 157, 76 N. W. (2d) 486, 490.

In construing the policy in question we are required to keep in mind the purpose and necessity of the policy and to attempt to carry out the intention of the parties by a fair, reasonable, and sensible interpretation rather than by a strict or technical interpretation which would distort the purpose of the contract and lead to an absurd re-

sult. In considering the purpose of the policy, we must keep in mind that Mrs. Gabrelcik was engaged in a public transportation business which involved one automobile. In order to qualify for a license to operate the automobile as a taxicab, she was required to take out public liability insurance. The higher premium on this policy was based on the risks inherent in that business. By a rider attached to the policy, coverage was limited to the operation of the automobile within a 15-mile radius of the assured's address. The description contained in another rider entitled "PUBLIC LIVERY OR TAXICAB" described the automobile as "ALL VEHICLES COVERED UNDER POLICY."

The purpose of the policy was not only to indemnify the insured but to protect the public. The agreement comprehended that should the taxicab become disabled a substitute vehicle would be used which would also be insured as a taxicab, and whether the substitute vehicle came from a stock of cars owned by the insured's husband or from some other source was not important. The important consideration was that the substitute car be used as a taxicab.

The difficulty encountered in this case derives from the form of policy used by the insurer. The insurer wrongly chose to use a policy written to cover "pleasure and business" purposes to insure a commercial risk. The printed form, designed for the family-car situation, contained the exclusion from substitute-automobile coverage of an automobile owned by the insured or his spouse, if a resident in the same household. The reason for this exclusion is well understood. It is to forestall schemes whereby all of a family's automobiles may be insured for the price of one. The risk which the insurance company seeks to avoid by this clause is the claim, in the event of accident involving an uninsured automobile was being used as a substitute for the insured automobile. See, Rodenkirk v. State Farm Mutual Auto. Ins. Co. 325 Ill. App. 421, 60 N. E. (2d) 269. Because of the doubtful relevance of this particular clause, as applied to an automobile used for a taxicab, it should be subordinated to the overriding purpose of the insuring agreement.

When the temporary-substitute-automobile clause is viewed in light of the overriding purpose of the insurance policy, as expressed in the

rider which extends coverage to a taxicab operation licensed by law, it should be construed to exclude from the benefits of the policy an automobile owned by the insured or spouse in the same household when used for a purpose other than a taxicab. The dominant purpose of the contract was to insure the taxicab or a substitute for it against risks involved in the operation of a taxicab. Since only one automobile was licensed as a taxicab and only one automobile could be used for that purpose, the danger or risk of having multiple automobiles covered by one policy was not present.

In an able memorandum the trial court expressed what seems to me to be a sensible appraisal of what the parties intended. The trial court said:

"Here we have a one-car taxi business. The insurance company must be held to the knowledge that the car insured would be out of service at times due to breakdowns, repairs, etc., thereby making necessary the substitution of another car in the continuous conduct of plaintiff's business. If plaintiff had borrowed the 1953 Ford from anyone other than Frank's Used Cars, or even as is, if Frank's Used Cars was a partnership or corporation, it is reasonable to assume that there would have been no denial of coverage by the defendant insurance company. We are not here dealing with the usual situation of a car individually owned by a spouse being used by an insured in lieu of the insured car and then claiming coverage, thus allowing for fraud and connivance between the married couple and in effect covering two vehicles by one policy."

It is true that courts may not ignore the plain language of a policy or write a new agreement. The policy may be construed, however, to carry out the intention of the parties where there is an apparent ambiguity growing out of the use of words in the substitute-automobile clause when considered in relation to the purpose of the whole policy. See, Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807; Lowry v. Kneeland, 263 Minn. 537, 117 N. W. (2d) 207; Farley v. American Auto Ins. Co. 137 W. Va. 455, 72 S. E. (2d) 520, 34 A. L. R. (2d) 933; St. Paul-Mercury Ind. Co. v. Heflin (W.D. Ark.) 137 F. Supp. 520. Here, we have a pro-

vision applicable to a family-automobile situation which is inappropriate to the purpose of the policy insuring a commercial automobile used for public transportation.

The views expressed by this court in Struble v. Occidental Life Ins. Co. 265 Minn. 26, 35, 120 N. W. (2d) 609, 615, are applicable here. There we said:

"It is unnecessary to review the many authorities which discuss criteria for the construction and interpretation of insurance contracts. It is sufficient to say that such contracts must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim for the indemnity which, in the making of the insurance contract, it was his object to secure. The rule which has influenced our court, and by which we must be guided here, is that in the interpretation of limiting conditions in insurance policies, when reasonably possible, words must be so construed as to make effective the general insurance purpose of the contract. In the Weum case we said (237 Minn. 105, 54 N. W. [2d] 29), 'In resolving doubts as to the meaning to be given the terms of an insurance contract, this court will note the purposes for seeking insurance and will avoid an interpretation which would forfeit rights which the insured may have believed he was securing, * * *.' Moreover, words may well be construed contrary to their literal meaning in order to carry out the general object of the insuring agreement. Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660; Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 76 N. W. (2d) 486; Gershcow v. Homeland Ins. Co. 217 Minn. 568, 15 N. W. (2d) 88; Garbush v. Order of United Commercial Travelers, 178 Minn. 535, 228 N. W. 148; Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807."

In Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 216, 30 N. W. (2d) 341, 345, we said:

"* * * The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole.

" '* * * the day is past for adhering to technical or literal meanings of particular words in a deed or other contract against the plain intention of the parties as gathered from the entire instrument.' Long v. Fewer, 53 Minn. 156, 159, 54 N. W. 1071."

Moreover, it seems to me that the result reached by the majority is morally wrong in view of the fact that at the time the liability arose the substitute automobile was actually in use as a taxicab within the risks provided by the policy. Further, it must be kept in mind that the public has an interest in having automobiles covered by liability insurance. Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 116 N. W. (2d) 605. This principle applies with much greater force in the case before us because the insurance policy in question was required by law as a condition to the operation of a public conveyance. Lloyds America v. Ferguson (5 Cir.) 116 F. (2d) 920.

For the foregoing reasons I respectfully dissent.

Since the foregoing dissent was submitted, the majority opinion has been revised and two concurring opinions have been written. The majority opinion now apparently expresses the view that in a subsequent action by the injured party after judgment, public policy "might well dictate a different result." It is also suggested that the record is deficient and that an action to reform the policy should have been instituted; but that in any event, the party who sustained the damage "may have rights against the insurer which will not be affected by this decision."

The record establishes that this is a proceeding brought to determine the rights of the insured pursuant to Minn. St. 555.01 and 555.02. The trial court had no difficulty with the sufficiency of the record or the procedure used. In his memorandum, he said:

"The policy in question was issued to plaintiff by defendant insurer for commercial use in the taxi business, a licensed and regulated business, with appropriate increased premium charge. The city of Fridley was furnished a copy of the policy as a prerequisite to the issuance of the cab company license to plaintiff."

The policy accordingly should not only be construed to provide ul-

timate protection to the public, but primary protection to the policy-holder as well.

NELSON, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Murphy.

THOMAS GALLAGHER, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Murphy.