**Patrick J. O'HANLON, individually and as Administrator of the Estate of Brian O'Hanlon, Plaintiff, Appellant/Cross-Appellee,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation, Nationwide Mutual Insurance Company, an Ohio corporation, Defendants,**

**and**

**Insurance Company of North America, a Pennsylvania corporation, Defendant, Appellee/Cross-Appellant.**

**Nos. 80–1216, 80–1217.**

United States Court of Appeals, Third Circuit.

Argued Oct. 9, 1980.

Decided Jan. 30, 1981.

**1020**

David Roeberg (argued), Frederick T. Haase, Jr., Roeberg & Associates, P.A., Wilmington, Del., for appellant Patrick J. O'Hanlon, etc.

F. Alton Tybout (argued), Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for appellee/cross-appellant, Insurance Company of North America.

Before SEITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge and MEANOR,* District Judge.

## OPINION OF THE COURT

MEANOR, District Judge.

On September 12, 1974, plaintiff's decedent, Brian O'Hanlon, was a passenger in an automobile being operated by a Michael Ryan. Ryan and the operator of a never identified vehicle engaged in a drag race. Ryan's car, without making contact with the unidentified vehicle, was forced off the road where it collided with apparently immovable objects. Brian O'Hanlon suffered devastating personal injuries from which his death ensued on the second anniversary of the accident. These events gave rise to an automobile liability insurance controversy of considerable magnitude and complexity, only part of which has survived for appellate review here.

Suit was brought against Hartford Accident and Indemnity Company, Insurance Company of North America (INA), the appellant here, and Nationwide Mutual Insurance Company. Nationwide insured the Ryan car. Hartford covered in one policy four vehicles owned by Patrick J. O'Hanlon, father of Brian. INA had provided to Patrick J. O'Hanlon an "umbrella policy"[1]

---

* Honorable H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. We have called this policy an "umbrella policy" for want of a better brief description. INA entitles it a Personal Catastrophe Plan. To call it an excess policy would not be accurate, for it provides some primary coverage for liabilities not arising out of automobile accidents, e.g., libel and slander. With respect to automobile liability insurance it is primarily an excess policy, but does provide some primary auto insurance. For example, most primary auto policies carry a geographical limitation to the continental United States and Canada. The umbrella policy contains no such limitation and would provide primary auto coverage outside the continental United States and Canada.

which included automobile liability coverage and also a separate primary auto policy which covered a pick-up truck owned by O'Hanlon. In the latter policy, the named insured was designated as Coe Management Company, a trade name under which O'Hanlon conducted business.

Nationwide paid its liability limit, $25,000. Recovery was sought under the Uninsured Motorist (UM) coverage of the Nationwide policy. UM recovery was also sought on the Hartford policy, the INA policy issued with Coe Management as named insured and the INA umbrella policy. The Hartford policy had $100,000/$300,000 ($100/$300) liability limits and it was asserted that under Delaware law the insurer was required to offer UM coverage in this amount, but had failed in its legal duty to do so.[2] Reformation of the Hartford policy to increase UM coverage to $100/$300 was sought. As to the INA Coe Management policy, it was contended that although Delaware law required that UM coverage be offered, INA did not make such coverage available. Reformation of that policy was sought to include UM coverage therein. The INA Coe Management policy had liability limits of $100/$300 and further reformation of this policy was claimed so as to provide UM coverage in that amount.

The INA umbrella policy provided UM coverage. Plaintiff asserted that this policy likewise was required by Delaware law to provide UM coverage, and consequently sought its reformation to UM limits of $300,000. This policy, as written, provided UM coverage up to $35,000 after deduction of a "retained limit". INA contended that because of payments made by other insurers, it owed nothing. Plaintiff asserted, however, that in light of an ambiguity in the UM coverage provisions of this policy INA owed at least the full $35,000.[3]

**2.** Delaware's uninsured motorist statute, 10 Del.Code tit. 18, § 3902 as amended, provides, in pertinent part:

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. Except, that no such coverage shall be required in or supplemental to a policy where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as "uninsured vehicle coverage."

(b) The amount of coverage to be so provided shall not be less than the minimum limits for bodily injury, death and property damage liability insurance provided for under the motorist financial responsibility laws of this State. [See n.14, infra] The coverage for property damage shall be subject to a $250 deductible for property damage arising out of any 1 accident unless the insurer and the insured agree in writing to a different deductible. Each insured shall be offered the option to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy.

As used herein, the term "property damage" shall include the loss of use of a vehicle.

**3.** The UM coverage provisions of INA's umbrella policy provide in relevant part:

the Company agrees to pay all sums up to $35,000 less the amount of the RETAINED LIMIT which the INSURED or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile . . ., provided:

(1) the Company's liability hereunder shall be only in excess of the RETAINED LIMIT,

. . .

The policy sets forth a definition of retained limit which in pertinent part states:

With respect to coverage B, the Company's liability shall be only for loss in excess of the INSURED'S RETAINED LIMIT defined as the greater of:

(1) the total amount of insurance payable to the INSURED under other Uninsured Motorists, . . . or Auto Liability insurance; or

(2) the minimum amount specified by the financial responsibility laws of the state in which the accident shall occur; and then up to an amount not exceeding $35,000 as the result of any one accident, provided, such liability shall be reduced by the amount of the RETAINED LIMIT.

Proceedings in the district court produced two reported decisions. *O'Hanlon v. Hartford Accident & Indem. Co.*, 439 F.Supp. 377 (D.Del.1977) (*O'Hanlon I*); *O'Hanlon v. Hartford Accident & Indem. Co.*, 457 F.Supp. 961 (D.Del.1978) (*O'Hanlon II*). There was a clause in the Nationwide and Hartford policies attempting to restrict UM coverage where the identity of the owner or operator of the uninsured vehicle could not be ascertained, thereby making the accident one involving a "hit-and-run" vehicle, to instances where there was a physical contact with the "hit-and-run" vehicle. The same clause would have been in the INA Coe Management policy had UM coverage been provided therein, as INA conceded was required under Delaware law. The district court held this limitation of UM coverage invalid. *O'Hanlon I*, 439 F.Supp. at 381. Nationwide has not appealed this determination and has paid its UM coverage limit. The district court further held that the plaintiff was entitled to "stack" UM coverages and that Hartford, since its policy provided UM coverage on four separate vehicles for which four premiums were paid, was liable with respect to four separate UM coverages. Hartford paid these claims and settled by additional payment the claim that its policy should be reformed to provide UM coverage with limits of $100/$300. Hence, Hartford is not involved in this appeal.

With respect to the issues surrounding the INA policies that are brought here by appeal and cross-appeal, the district court first held that the INA Coe Management policy which, as written, did not provide UM coverage but which concededly should have so provided pursuant to Delaware law, was not a policy having UM coverage that inured to the benefit of Brian O'Hanlon. Following an evidentiary hearing, the district court also determined that the INA umbrella policy was not a policy required by 10 Del.Code tit. 18, § 3902 to provide UM coverage. This rendered moot plaintiff's

claim that that policy should be reformed to provide UM coverage with $300,000 limits. Thereafter in an unreported opinion, the court held that because of an ambiguity in the UM coverage provisions contained in the INA umbrella policy, INA was required to pay its full limit of $35,000 pursuant to the UM coverage contained in that policy.[4]

Thus, the remaining issues before us may be defined as follows:

1. Whether INA policy CAL 15 38 48, covering a 1973 GMC pick-up truck and designating Coe Management Company as named insured was a policy whose statutorily mandated UM coverage inures to the benefit of Brian O'Hanlon.

2. Whether INA policy XIM 30 82 80, *i.e.*, the INA umbrella policy, which in fact provides UM coverage, is a policy required by 10 Del.Code tit. 18, § 3902 to contain UM coverage.[5]

3. Whether the "retained limit" as defined in INA's umbrella policy should be deducted from INA's maximum exposure of $35,000, as INA contends, or should be deducted from "all sums which the insured or his legal representative shall be legally entitled to recover from the owner or operator of an uninsured automobile" as the plaintiff contends. Subsidiary to this issue is the question whether the umbrella policy coverage language is ambiguous, with the result that any ambiguity must be resolved in favor of the insured.

## I.

INA policy CAL 15 38 48 listed Coe Management Company as named insured and covered a 1973 GMC pick-up truck. INA concedes that it breached its statutory duty under 10 Del.Code tit. 18, § 3902 by not providing UM coverage in this policy and that the policy must be construed and enforced as though the mandated UM coverage had been contained in it. The endorse-

---

4. Other issues were decided by the district court. However, their recitation is not necessary to show the origination of the questions presented by the present appeals.

5. If the plaintiff prevails on issues 1 or 2 as defined above, a remand will be necessary to resolve the reformation dispute.

ment that INA would have used to provide UM coverage within this policy is contained in the record, and there is no dispute that we are obligated to read this policy as though that endorsement had been present when the policy was issued.[6]

Coe Management Company is a trade name under which Patrick J. O'Hanlon conducted business. The truck insured under INA policy CAL 15 38 48 was used by an employee of O'Hanlon who normally had the truck in his possession. He was under instructions to use the truck only in the course of his employment.

The Coe Management policy is a commercial automobile liability policy. It was written to cover a business vehicle as distinguished from a private passenger family automobile. It seems to have been designed to cover business entities rather than natural persons. For example, in defining "persons insured" the policy refers to the named insured and "any partner or executive officer thereof." The use of the pickup truck described under the heading "owned automobiles" is listed as "business." These considerations led the district court to conclude that O'Hanlon never intended to protect his family and personal interests under this policy, but rather intended the policy to cover only his business related risks. *O'Hanlon I.* 489 F.Supp. at 387–88.

On the other hand, the application for the policy,[7] although listing Coe Management Company as named insured, also notes that the insured is an individual. The UM coverage endorsement which we must construe as part of this policy, reads as though it were designed for use with a policy that covered a natural person as named insured. The UM endorsement provided to us contains a blank space in which the name of the named insured is to be inserted. If this endorsement had been contained within the policy, obviously the name Coe Management Company would have been inserted as the named insured. There can be no question but that INA knew that this was a trade name synonymous with Patrick J. O'Hanlon. The UM endorsement defined "Persons Insured", in part, as "the Named Insured . . . and, while residents of the same household, the spouse and relatives of . . . [the Named Insured.]"[8]

The district court is undoubtedly correct in its conclusion that Policy No. CAL (com-

---

**6.** It is conceded that the UM endorsement supplied in the record is the one that INA would have used to provide the statutorily required UM coverage, for it is the only approved form INA had at the time. We do not know if a different form is now in use regarding UM coverage in connection with commercial vehicle policies.

**7.** Actually, the application contained in the record was submitted in connection with a policy insuring the pick-up truck for the year preceding the policy in issue. We take it that the policy before us was a renewal of the policy that issued upon this application. We believe it proper to treat the application as one for the policy before us.

**8.** There is an incongruity between the definition of the persons insured with respect to the liability coverages of this policy and the definition of persons insured under the UM endorsement. If this creates an ambiguity, it must, of course, be resolved in favor of the insured. We believe, however, that the UM endorsement must be construed in a manner uninfluenced by the definitions applicable to the liability coverages. A somewhat similar situation was confronted in *Ohio Casualty Ins. Co. v. Fike,* 304 So.2d 136 (Fla.App.1975). There the policy

was issued to "Russell C. Fike, Jr. and Robert D. Fike, d/b/a Orange State Painting Company". The policy contained an endorsement that provided for the payment of medical expenses arising out of automobile accidents sustained by "the named insured, *or any relative . . . while a pedestrian through being struck by a motor vehicle." Id.,* at 137 (emphasis in original). The daughter of Russell Fike was struck by an automobile while a pedestrian, and recovery was sought under the endorsement. The insurer contended that its insurance was issued to a partnership and was limited to that partnership. The court disagreed, holding that the policy covered individual partners as well as the partnership. The court said:

> The fact that the defendant insurer issued an amendatory endorsement to the policy in question which provided personal injury protection to "the named insured *or any relative"* seems inapposite to the insured's [*sic;* should read insurer's] position that the policy in question was intended to be limited to a "partnership"; if anything, the amendatory endorsement is reflective of an intention to insure the *individual* as well as the partnership.

*Id.* at 137 (emphasis in original).

mercial automobile liability) 15 38 48 issued to Coe Management Company was never intended by either O'Hanlon or INA to apply to other than business related risks. Under the liability features of this policy, Brian O'Hanlon did not qualify as a person insured thereunder by being a relative of the named insured living in the same household, as he did under UM coverage endorsement that should have been a part of this policy. Basically, if Brian were to achieve insured status under the Coe Management policy, that could only result from his operation of an owned or hired automobile with the permission of the named insured. However, if the description of named insured in the UM coverage endorsement of the policy as Coe Management Company is to be read as synonymous with Patrick J. O'Hanlon, then it is plain that Brian O'Hanlon did in fact achieve status as a person insured under the UM endorsement simply by being a relative of Patrick J. O'Hanlon residing in the same household.

We believe that we are obliged to read the designation of the named insured in the UM endorsement as a synonym for Patrick J. O'Hanlon, or at least as though the UM endorsement had identified the named insured as "Patrick J. O'Hanlon, trading as Coe Management Company."

The issue whether a policy that insures an individual under a trade name insures the same person as would a policy issued to that person under his given name has arisen most frequently with respect to non-owned or temporary substitute automobile coverage.[9]

In *Samples v. Georgia Mutual Insurance Co.*, 138 S.E.2d 463, 464, 110 Ga.App. 297

(Ga.App.1964), the plaintiff was driving a vehicle purchased by her husband in the trade name under which he owned and operated a business. The plantiff had procured a policy from the defendant in her own name, and was driving the vehicle registered in her husband's trade name at a time when her vehicle, which was covered by defendant's policy, was temporarily out of commission. It is inferable that the vehicle registered in the trade name was not insured; while operating it, plaintiff was involved in an accident. After defending that suit, she brought an action against Georgia Mutual in an effort to recover attorneys fees and litigation expenses. In so doing, plaintiff relied on the temporary substitute automobile coverage of the Georgia Mutual policy, which defined a temporary substitute vehicle for which coverage would be provided as a vehicle "not owned by the named insured or [her] spouse." If the vehicle registered in the trade name was not owned by the spouse of the plaintiff, then there was temporary substitute coverage available to plaintiff. Conversely, if that vehicle was, in fact, owned by plaintiff's spouse, then there was no temporary substitute coverage.

The court denied coverage. It pointed out that a trade name "is merely a name assumed or used by a person recognized as a legal entity," and that "a judgment against one in an assumed or trade name is a judgment against him as an individual." *Id.* at 465. The court stated:

> The fact that the plaintiff's husband purchased this automobile in the name that he used in doing business does not contra-

**9.** Most automobile policies provide coverage on an excess basis for non-owned and temporary substitute vehicles. A non-owned automobile is usually defined as an automobile not owned by the named insured, his spouse or any relative living in the same household. Coverage for a temporary substitute automobile exists where the described vehicle is temporarily withdrawn from service and another is used in its place. This latter coverage normally defines a temporary substitute automobile as one not owned by the named insured, and in some policies this definition has been expanded to include a vehicle not owned by the named in-

sured's spouse or any relative if resident of the same household. The thrust of these provisions is to prevent one policy with one described automobile from being applicable to other vehicles owned by members of the same family unit, and, thus, to require a separate premium to be paid for each automobile owned by persons in that unit. For an example of the usual language as to non-owned coverage, see *Cox v. Santoro*, 94 N.J.Super. 319, 228 A.2d 101 (Law Div.), *aff'd*, 98 N.J.Super. 360, 237 A.2d 491 (App.Div.1967), and as to temporary substitute coverage, see *Kelly v. Craig*, 263 F.Supp. 570 (W.D.Mo.1967).

dict the fact that he owned the automobile as an individual.

*Id.*[10]

In *Gabrelcik v. National Indemnity Co.*, 269 Minn. 445, 131 N.W.2d 534 (1964), the plaintiff insured her taxicab with defendant under a policy that defined a temporary substitute automobile as "an automobile not owned by the named insured or his spouse if a resident of the same household." *Id.* at 535. The plaintiff's husband was in the used-car business and had in stock a Ford automobile registered in the name of Frank's Used Cars, a trade name under which plaintiff's husband conducted his business. While the taxi was undergoing repair, plaintiff used the Ford in her taxi business. A passenger was injured and plaintiff sought coverage under the temporary substitute coverage of the policy issued to her by defendant. The court noted that an obvious purpose of excluding temporary substitute coverage as to vehicles owned by the spouse of the named insured residing in the same household "is to prevent the same policy from being used to provide coverage for vehicles other than those for which a premium was paid." *Id.*

The court also considered whether the vehicle registered in the name of Frank's Used Cars was owned by the plaintiff's husband. It so held, stating:

> We fail to see how the fact that plaintiff's spouse is the owner of the vehicle in question is changed for insurance purposes by the manner in which it is registered with the state. Whether the vehicle is registered in the husband's name or in the name of the business which he

owns and operates as a sole proprietorship, the result is the same; namely, that this vehicle was owned by the insured's spouse who resided in the same household.

*Id.* at 536.

■ INA argues that it would be error to apply the doctrine of reformation or to create an ambiguity where none exists in order to equate Coe Management and Patrick J. O'Hanlon. We agree that application of either theory to this case would be contrived. We are persuaded by the cases arising under non-owned and temporary substitute coverage which use neither reformation nor ambiguity in holding that an insured's trade name and given name should be equated. We, therefore, hold, as do the cases cited and discussed above, that where an insured purchases a policy in a trade name, the policy will be viewed as if issued in his given name. To do otherwise would, as a general principle, frustrate the unambiguous underwriting intent underlying the usual definitions of non-owned and temporary substitute automobiles.[11]

■ INA's primary argument in denying UM coverage under the Coe Management policy is that Patrick J. O'Hanlon should not be considered the named insured thereunder. It also argues that under 10 Del. Code tit. 18, § 3902 the Coe Management policy was not required to afford UM coverage to Brian O'Hanlon. That section requires that any "policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle ..." shall include UM coverage "for the protection of persons insured thereunder ..."

---

10. To the same effect is *Kelly v. Craig*, 263 F.Supp. 570 (W.D.Mo.1967), which relied on *Samples v. Georgia Mutual Ins. Co., supra.*

11. An insured may own or control a corporation which owns a vehicle or may be a member of a partnership that, as an entity, owns a vehicle. Under these circumstances, an insured might well be covered under the non-owned and temporary substitute coverages of a policy issued in his given name while operating a vehicle owned by the corporation or partnership. This is an underwriting risk, but a minimal one, for it is unlikely that such entities would be formed for the purpose of overloading

an insurance policy. The danger of such overloading is much greater as to multiple vehicles owned within the same family unit. *See, e.g., Saint Paul-Mercury Indem. Co. v. Heflin*, 137 F.Supp. 520 (W.D.Ark.1956).

We desire to add that the cases which we have discussed and cited, equating for insurance purposes, an insured's given name and his trade name were not cited to the district court. Nor were they cited here. However, we have a duty to decide upon the application of what appears to us to be the controlling legal precepts.

unless the UM coverage is rejected in writing by the insured. INA correctly reads the reference to "persons insured thereunder" to refer to those persons insured under the liability features of the policy. As we have stated above, Brian O'Hanlon was not a defined insured under the terms of the liability provisions in the Coe Management policy. It is quite true that there was no statutory obligation on the part of INA to include Brian O'Hanlon within the UM coverage of that policy. However, nothing in section 3902 prevents INA from providing UM coverage to persons outside the class of liability insureds as defined in the underlying policy. That is exactly what INA has done, for the UM endorsement that it was required to include within the Coe Management policy covers "the Named Insured . . . and, while residents of the same household, the . . . relatives of [the Named Insured]." Once it is established that the named insured is Patrick J. O'Hanlon, the policy is unambiguous and plainly affords UM coverage to Brian O'Hanlon.

The judgment in favor of INA on plaintiff's claim under the policy issued with Coe Management Company as named insured is reversed. Plaintiff is entitled to the statutory insurance of $10,000 in UM coverage on this policy and to further proceedings to resolve his claim that the UM limits on this policy should be reformed to provide UM coverage of $100/$300.[12]

## II.

In *O'Hanlon II*, 457 F.Supp. 961, *supra*, the district court held that INA's umbrella policy was not a policy required by 10 Del. Code tit. 18, § 3902 to contain UM coverage. Hence, the court dismissed plaintiff's claim that this policy should be reformed to increase UM coverage to limits of $300,000.

Plaintiff correctly notes that an objective of subsection (b) of section 3902 was to provide a purchaser of insurance with the opportunity to protect himself from the risk posed by an uninsured driver to the extent of his liability limits or $300,000, whichever is less.[13]

There is no point in construing a statute to require that something be done superfluous to its objectives. Section 3902 expresses a legislative command that automobile liability policies issued in Delaware provide UM coverage as a matter of course with limits at least equal to those required "under the motorist financial responsibility laws"[14] with the option on the part of the

---

12. Under other circumstances, INA might be able to claim that the UM endorsement should be reformed to remove from its coverage the personal and family risks that, as written, it provides. It seems, however, that INA cannot do this for it has no approved substitute language with which the policy may be reformed. *See* n.6, *supra*.

13. For aid in interpreting section 3902 on this issue the district court held an evidentiary hearing. *See O'Hanlon II*, 45 F.Supp. 961. Evidence was taken from a professor of law with expertise in the field of uninsured motorists' coverage and an INA employee versed in the history and extent of coverage of umbrella policies. No attack has been made upon the propriety of holding such a hearing in order to obtain "legislative facts" and, while we imply no criticism of it, we find that we need not consider the evidence thus adduced in order to resolve the issue whether UM coverage was mandated in the umbrella policy by section 3902.

14. Delaware's Financial Responsibility Law, 21 Del.Code tit. 21, § 2902, as amended, provides in pertinent part:

(a) A "motor vehicle liability policy," as said term is used in this chapter, shall mean an owner's or an operator's policy of liability insurance, certified, as provided in § 2948 or 2949 of this title, as proof of financial responsibility and issued, except as otherwise provided in § 2949 of this title, by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person named therein as insured.

(b) Such owner's policy of liability insurance shall:

(1) Designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

(2) Insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United

insured to reject UM coverage in writing, or to obtain increased UM coverage equal to liability limits, but not to exceed $300,000.

▮ Policies such as the INA umbrella policy under consideration here, with respect to their automobile coverages, would not exist but for underlying primary auto policies to which they provide excess liability insurance. Primary insurance policies in Delaware, by their very existence, provide insureds with all of the benefits accorded under section 3902. To place umbrella policies within the ambit of section 3902 would be to apply that section to require UM coverage in addition to that provided by primary policies. We do not believe that section 3902 can be so read, and hold that it is not applicable to policies that provide excess liability insurance.[15]

### III.

There is no dispute that the UM coverage contained in the INA umbrella policy is applicable to Brian O'Hanlon. The UM coverage in that policy is entitled "Coverage B" and the pertinent portions of the coverage clause as well as of the definition of "retained limit" are set forth in note 3, supra.[16]

The district court held, and it is not argued to the contrary here, that the amount of the retained limit in this case is $75,000. This sum is the aggregate of the $25,000 that Nationwide paid on its liability cover-age, the $10,000 Nationwide paid under its UM coverage, and the liability limit of $10,000 each on the four separate UM coverages contained in the Hartford policy.[17]

INA's interpretation of this language requires that the amount of the retained limit be ascertained, here $75,000, and that this amount be deducted from $35,000, with the result that the company is liable only for the difference. Such an application of the policy terms would result in no payment.[18]

Plaintiff's interpretation requires that, first the total loss or damage suffered by the insured be ascertained: Second, the amount of the retained limit is to be calculated. Following these steps, the amount of the retained limit is deducted from the total loss leaving INA to pay the difference up to $35,000.

We believe that the plaintiff's construction of the UM coverage of the umbrella policy is the correct one. At least, the policy is ambiguous, and under well-settled doctrine the ambiguity must be resolved in favor of the insured. *Transport Indemnity Co. v. Home Indemnity Co.,* 535 F.2d 232 (3d Cir. 1976); *Novellino v. Life Insurance Co. of North America,* 216 A.2d 420 (Del. 1966).

One cannot read the UM provisions of the umbrella policy without coming to the conclusion that INA is promising to pay, under some circumstances, up to $35,000 in UM

States of America or the dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $10,000, because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person, $20,000, because of bodily injury to or death of 2 or more persons in any 1 accident, and $5,000, because of injury to or destruction of property of others in any 1 accident.

**15.** Our result is in accord with *Trinity Universal Ins. Co. v. Metzger,* 360 So.2d 960 (Ala. 1978). *Contra, Aetna Cas. & Sur. Co. v. Green,* 327 So.2d 65 (Fla.Dist.Ct.App.), *cert. denied,* 336 So.2d 1179 (Fla.1976).

**16.** It is clear and not disputed that the vehicle with which Ryan engaged in a drag race was an uninsured vehicle within the meaning of this policy. *See O'Hanlon I,* 439 F.Supp. at 379.

The definition of "insured" set forth in the policy includes Brian O'Hanlon.

**17.** INA contended below, at one point, that the retained limit should include as amounts payable the increased limits of the Hartford UM coverage to $100/$300 that the plaintiff alleged the Hartford policy should have provided. That assertion has not been pressed on appeal.

**18.** INA has in fact paid $10,000 to plaintiff under the UM coverage of its umbrella policy. We deduce that this payment was made following payment by Nationwide of its $25,000 liability limit, and before the judicial rulings which led to the payments by Nationwide and Hartford under their UM coverages. INA has not sought recoupment of this $10,000 and its payment is why the district court entered judgment against INA for $25,000 not $35,000 under its umbrella policy UM coverage.

coverage. Conversely, under INA's view of the policy, it would never pay more than $25,000.

This is because the policy states two alternative sums as the retained limit. One is the gross amount of other UM and liability insurance payable to the insured. The other is "the minimum amount specified by the financial responsibility laws of the state in which the accident shall occur." The latter amount as specified by Delaware law is $10,000. This sum is the minimum to be deducted and would be deducted even if not paid.

We doubt that there is any ambiguity with respect to the issues before us concerning INA's UM umbrella policy coverage, and we think INA has misconstrued its own policy. It seems clear that the INA has agreed to pay, up to a maximum of $35,000, "all sums ... which the INSURED ... shall be legally entitled to recover as damages from the owner or operation of an uninsured automobile" after the retained limit is deducted from the damages to which the insured is legally entitled. The retained limit is then defined as the total of other insurance payable or the minimum limit specified by the applicable financial responsibility laws, whichever is greater.

This, it seems to us, requires: first, that the total damages of the insured be ascertained; second, that the retained limit be calculated; and third, that the retained limit be deducted from the total damages leaving INA to pay the difference, if any, but not to exceed $35,000.

INA argues that application of basic grammatical rules of construction will support its version as the proper interpretation of its policy language "all sums up to $35,000 less the retained limit."

It is elementary that a limiting or modifying phrase refers to its immediate antecedent. Such an antecedent may be a noun, or a noun equivalent, such as a phrase. Here the limiting phrase is "less the amount of the retained limit." INA would have it that this phrase refers only to the figure $35,000. However, we believe that proper construction would apply the limiting phrase to its antecedent phrase—"all sums up to $35,000." To put it another way, we read $35,000 as a parenthetical description and, if this is done, it is clear that both the mention of the sum of $35,000 and the phrase "less the retained limit" modify the words "all sums".

Even if we are incorrect, and the intent of the draftsman was as INA asserts, then we are clear that the policy is ambiguous and that ambiguity must be resolved against the insurer.

### IV.

For the reasons set forth in this opinion, the judgment of the district court in favor of INA on plaintiff's claim under policy No. CAL 15 38 48, designating Coe Management Company as named insured, is reversed and remanded for proceedings not inconsistent with this opinion. The district court is directed to enter a judgment in the amount of $10,000 in favor of plaintiff pursuant to this policy and to conduct further proceedings to resolve the question whether the UM limits of this policy should be reformed to provide UM coverage with a limit of $100/$300.

The judgment of the district court in the amount of $25,000 in favor of the plaintiff against INA on plaintiff's claim under the UM coverage features of its Personal Catastrophe Policy No. XIM 30 82 80 is affirmed.[19]

19. In view of the extent of Brian O'Hanlon's injuries it is clear that the addition of $10,000 under the UM coverage of the Coe Management policy will not increase the retained limit to such extent as would render INA's UM obligation under the umbrella policy less than $35,000.

Further, we doubt, but cannot be certain, that an increase of the retained limit by a

further addition in the amount of $90,000 pursuant to reformation of the Coe Management policy or in the amount of Hartford's payment made in settlement of its reformation dispute, or both, would alter INA's liability for the full $35,000 available to appellant under the umbrella policy's UM coverage. We recognize, however, the possibility that the retained limit could be affected to an extent sufficient to

SEITZ, Chief Judge, dissenting in part.

I agree with the majority that the district court was correct in holding that 10 Del. Code tit. 18, § 3902 does not require that INA's umbrella policy contain UM coverage. Further, I agree with the majority that the district court was correct in holding that INA owed O'Hanlon $35,000, not $10,000, under the UM provision in the umbrella policy. However, I diverge from the majority when it reverses the judgment in favor of INA on O'Hanlon's claim under the CAL policy issued to Coe Management Co.

I believe, as does the majority, that the district court was correct when it concluded that the CAL policy issued by INA was never intended by either O'Hanlon or INA to apply to other than business-related risks. However, I cannot agree with the majority's apparent prediction that the Delaware state courts would view each policy issued in a trade name for commercial purposes as if it were issued in an individual's given name.

In reaching this conclusion, the majority reasons that "[t]o do otherwise would, as a general principle, frustrate the unambiguous underwriting intent underlying the usual definitions of non-owned and temporary substitute automobiles." I disagree. I believe that the majority's reliance on the cases arising under non-owned and temporary substitute coverage is misplaced. The policies under review in those cases contain a clause providing for temporary substitute coverage when the vehicle described in the policy is temporarily out of service and another is used in its place. These policies exclude from temporary substitute coverage any vehicle owned by the named insured or his or her spouse. When an insured uses a car registered in his or her spouse's trade name, the court will equate the trade name with the spouse's given name in order to effectuate the intent of the parties and to prevent an insured from obtaining coverage for vehicles other than those for which he or she has paid a premium. *See, e.g., Gabrelcik v. National Indemnity Co.*, 269 Minn. 445, 131 N.W. 534, 535 (1964).

In this case, however, the majority applies this doctrine in order to achieve a result that is admittedly contrary to the intent of both parties, and that requires INA to provide coverage for nonbusiness-related risks, for which O'Hanlon has never paid INA a premium. This result is directly contrary to the rationale underlying the cases on which the majority relies. Therefore, I would affirm the district court's holding that Brian O'Hanlon would not have been covered under the CAL policy even if INA had provided the required UM coverage.

modify, in whole or in part, INA's liability under the UM provisions of its umbrella policy.

We affirm the district court's judgment on the umbrella policy with the notation that if INA is ultimately entitled to any reduction of its umbrella UM liability as a result of reformation of the Coe Management policy, either with or without addition of the Hartford settlement amount, that reduction can be credited against the judgment on the Coe Management policy as reformed.

We are not directing the district court to permit INA to advance the argument that the Hartford settlement amount should be added to the retained limit. But in fairness, since we are remanding for disposition the claim that the Coe Management policy should be reformed, we are authorizing the district court, in its discretion, to permit INA to press this argument.